**No. 2023-1811**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DEERE & COMPANY,

*Plaintiff-Appellant*,

*v.*

AGCO CORPORATION, PRECISION PLANTING LLC,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Delaware, Nos. 1:18-cv-00827-CFC-JLH and 1:18-cv-00828-CFC-JLH, Judge Colm F. Connolly

## BRIEF FOR DEFENDANTS-APPELLEES AGCO CORPORATION AND PRECISION PLANTING LLC

HEATH A. BROOKS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-6000

MICHAEL J. SUMMERSGILL
RICHARD W. O'NEILL
JORDAN L. HIRSCH
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendants-Appellants AGCO Corporation and Precision Planting LLC*

December 4, 2023

## U.S. PATENT NO. 8,813,663, CLAIM 1

1. A seeding machine, comprising:

a seed meter having a metering disk with a plurality of apertures in a circular array adapted to adhere seeds to the metering disk to move the seeds along a seed path as the metering disk rotates;

a seed delivery system associated with said seed meter, said seed delivery system including:

a housing for seed from said metering disk, the housing having a lower opening through which seed is discharged;

a single endless member within said housing disposed around a first drive pulley and a second idler pulley, said endless member engaging seed from the seed meter and moving the seed to said lower opening where seed is discharged from said housing; and

a loading wheel engaging seeds adhered to the metering disk and moving along the seed path and guiding the seed into the single endless member whereby the single endless member moves the seed to the lower opening.

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants AGCO Corporation and Precision Planting LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

AGCO Corporation and Precision Planting LLC

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

Monsanto Co. & Bayer AG.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Tractor and Farm Equipment Limited as to AGCO Corporation

AGCO Corporation as to Precision Planting LLC

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP: Harry Hanson, R. Gregory Israelsen, Mark G. Matuschak, Michaela P. Sewall, Mary (Mindy) V. Sooter, Amy R. Pearlman (former), Michael E. Wolin (former)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP: Jack B. Blumenfeld, Anthony David Raucci, Jeremy A. Tigan

TROUTMAN PEPPER HAMILTON SANDERS LLP: James E. Schutz

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below) [ ] No [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: December 4, 2023

/s/ Michael J. Summersgill
MICHAEL J. SUMMERSGILL
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

# TABLE OF CONTENTS

Page

PATENT CLAIM AT ISSUE

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF RELATED CASES ....................................................................1

INTRODUCTION ....................................................................2

STATEMENT OF ISSUES ON APPEAL ....................................................................5

STATEMENT OF THE CASE ....................................................................6

A. The Parties ....................................................................6

B. Technology Background ....................................................................7

C. The Asserted Patents ....................................................................11

1. The Alleged Prior Art Problem/Solution ....................................................................11

2. The Asserted Claims/Claim Construction ....................................................................14

a. "Seed delivery system"/"Method of delivering seed" ....................................................................14

b. "Endless member" ....................................................................17

D. Precision's SpeedTube and vSet2 Products ....................................................................18

E. Deere's Failed Attempt to Acquire Precision and Its "Innovative" SpeedTube/vSet2 Products ....................................................................24

F. The District Court's Denial of Deere's Summary Judgment Motion ....................................................................25

G. The Jury's Noninfringement Verdict ....................................................................26

H. The District Court's Post-Trial Rulings ..... 31

SUMMARY OF THE ARGUMENT ..... 33

STANDARD OF REVIEW ..... 36

ARGUMENT ..... 37

I. A NEW TRIAL IS NOT WARRANTED. ..... 37

A. The Noninfringement Verdict Was Not "Against the Great Weight of the Evidence" Or "A Miscarriage Of Justice." ..... 38

B. The District Court Did Not Abuse Its Discretion In Excluding Precision's '037 Patent. ..... 49

C. Deere's Claim-Construction-Related Arguments Do Not Warrant A New Trial. ..... 53

1. The District Court Did Not Err In Declining To Add The "No Disclaimer" Language To Its Construction. ..... 53

2. The District Court Did Not Need To Construe "Capture." ..... 59

3. The District Court Did Not Err With Respect to Deere's "System As A Whole" Arguments. ..... 62

II. THE DISTRICT COURT RIGHTLY DENIED DEERE'S REQUEST FOR JMOL OF INFRINGEMENT. ..... 64

III. THE DISTRICT COURT'S JUDGMENT CAN BE AFFIRMED BECAUSE SPEEDTUBE/VSET2 DO NOT MEET THE "ENDLESS MEMBER" LIMITATION AS PROPERLY CONSTRUED. ..... 68

CONCLUSION ..... 75

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES


Page(s)

*01 Communique Laboratory, Inc. v. LogMeIn, Inc.*,
687 F.3d 1292 (Fed. Cir. 2012) ....................56

*Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*,
808 F.3d 1313 (Fed. Cir. 2015) ....................71

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007) ....................74

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ....................73

*ArcelorMittal France v. AK Steel Corp.*,
700 F.3d 1314 (Fed. Cir. 2012) ....................37, 59

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017) ....................60

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................62

*Biogen, Inc. v. Berlex Laboratories, Inc.*,
318 F.3d 1132 (Fed. Cir. 2003) ....................74

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008) ....................59, 62

*Comaper Corp. v. Antec, Inc.*,
596 F.3d 1343 (Fed. Cir. 2010) ....................65

*Comcast IP Holdings I LLC v. Sprint Communications Co., L.P.*,
850 F.3d 1302 (Fed. Cir. 2017) ....................60

*Dupree v. Younger*,
598 U.S. 729 (2023)....................45, 66

*Duro-Last, Inc. v. Custom Seal, Inc.*,
321 F.3d 1098 (Fed. Cir. 2003) ....................66

*Forest Laboratories, Inc. v. Abbott Laboratories*,
239 F.3d 1305 (2001)....................................................................................50

*Function Media, L.L.C. v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) ......................................................................42

*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ......................................................................66

*Hayer v. University of Medicine*,
490 F. App'x 436 (3d Cir. 2012) (nonprecedential)..........................................66

*Hewlett-Packard Co. v. Mustek Systems, Inc.*,
340 F.3d 1314 (Fed. Cir. 2003) ......................................................................54

*Honeywell International, Inc. v. ITT Industries, Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) ..............................................................71, 74

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) (nonprecedential)......................................43

*In re Paoli Railroad Yard PCB Litigation*,
113 F.3d 444 (3d Cir. 1997) ..........................................................................52

*InTouch Technologies, Inc. v. VGo Communications, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) ......................................................................41

*Jester v. Hutt*,
937 F.3d 233 (3d Cir. 2019) ..........................................................................36

*Kars 4 Kids Inc. v. America Can!*,
8 F.4th 209 (3d Cir. 2021) .....................................................................37, 65

*Klein v. Hollings*,
992 F.2d 1285 (3d Cir. 1993) ........................................................................46

*Koito Manufacturing Co., Ltd. v. Turn-Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004) ......................................................................41

*Koninklijke Philips N.V. v. Zoll Medical Corp.*,
656 F. App'x 504 (Fed. Cir. 2016) (nonprecedential)......................................60

*Lazare Kaplan International, Inc. v. Photoscribe Technologies, Inc.*, 628 F.3d 1359 (Fed. Cir. 2010) .......... 62

*Lesende v. Borrero*, 752 F.3d 324 (3d Cir. 2014) .......... 65

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc) .......... 74

*Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352 (Fed. Cir. 2014) .......... 65

*MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323 (Fed. Cir. 2005), *vacated on other grounds*, 547 U.S. 388 (2006) .......... 56

*MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015) .......... 37

*Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307 (Fed. Cir. 2007) .......... 73

*Pacific Biosciences of California, Inc. v. Oxford Nanopore Technologies, Inc.*, 996 F.3d 1342 (Fed. Cir. 2021) .......... 36, 37, 38, 59

*Pannu v. Iolab*, 155 F.3d 1344 (Fed. Cir. 1998) .......... 41

*Philadelphia Workforce Development Corp. v. KRA Corp.*, 673 F. App’x 183 (3d Cir. 2016) (nonprecedential) .......... 53

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......... 69

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 904 F.3d 965 (Fed. Cir. 2018) .......... 44, 53, 59, 62, 63

*Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008) .......... 73

*Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010) .......... 58

*Profectus Technology LLC v. Huawei Technologies Co.*,
823 F.3d 1375 (Fed. Cir. 2016) ....................71

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013) ....................71

*Sunovion Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*,
731 F.3d 1271 (Fed. Cir. 2013) .................... 68-69

*Telcordia Technologies, Inc. v. Cisco Systems, Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) ....................74

*TomTom, Inc. v. Adolph*,
790 F.3d 1315 (Fed. Cir. 2015) ....................56

*TVIIM, LLC v. McAfee, Inc.*,
851 F.3d 1356 (Fed. Cir. 2017) ....................41, 42, 67

*Tyger v. Precision Drilling Corp.*,
832 F. App’x 108 (3d Cir. 2020) (nonprecedential)....................37

*Uniloc USA, Inc., v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ....................43

*VLSI Technology LLC v. Intel Corp.*,
No. 22-1906, __ F.4th __, 2023 WL 8360083 (Fed. Cir. Dec. 4, 2023)............61

*Wi-Lan, Inc. v. Apple, Inc.*,
811 F.3d 455 (Fed. Cir. 2016) ....................42

## RULES

Fed. R. Civ. P. 51 ....................54

Fed. R. Evid. 403 ....................50, 52

## OTHER AUTHORITIES

*Deere & Company et al. v. Kinze Manufacturing, Inc. et al.*, No. 4:20-cv-00389-RGE-CFB (S.D. Iowa) ....................17, 55, 60

## STATEMENT OF RELATED CASES

Appellant Deere & Company ("Deere") asserted two patents at trial in this case, U.S. Patent Nos. 8,813,663 ("'663 patent") and 9,699,955 ("'955 patent"). The '663 patent is also at issue in *Deere & Company et al. v. Kinze Manufacturing, Inc. et al.*, No. 4:20-cv-00389-RGE-CFB (S.D. Iowa) ("*Kinze*"). The '955 patent was at issue in *Kinze*, but was dropped before trial in that case along with five other patents previously asserted in this case, U.S. Patent Nos. 9,480,199, 9,686,906, 9,807,924, 9,861,031, and 10,004,173. Counsel for Appellees AGCO Corporation ("AGCO") and Precision Planting LLC ("Precision") are not aware of other cases pending in this or any other court that may affect or be affected by the Court's decision in this appeal.

The '663 and '955 patents were also previously at issue in *Precision Planting, LLC v. Deere & Co.*, 2021 WL 5144369 (Fed. Cir. Nov. 5, 2021), in which this Court upheld decisions of the Patent Trial and Appeal Board finding the challenged claims of the '663 and '955 patents not unpatentable.

## INTRODUCTION

During a 4-day jury trial, the parties offered testimony from 15 witnesses and admitted more than 80 exhibits, including on the key disputed factual issue of whether the accused SpeedTube/vSet2 products meet the requirement of each asserted claim to "remove seed from the seed meter by capturing the seed." This evidence included an in-court demonstration of the SpeedTube/vSet2 products from the lead designer of SpeedTube, who also explained how the products were developed and operate; slow-motion video that allowed the jury to witness the precise movement of seeds within the SpeedTube/vSet2 products including as they were removed from the seed meter; and testimony from multiple technical experts, including critical cross-examination admissions from Deere's own expert.

Based on this trial record—which conclusively demonstrated that SpeedTube removes seed from the vSet2 seed meter, not by capturing the seed as required by Deere's patent claims, but rather by ***projecting and accelerating*** the seed toward a flighted belt—the jury determined that AGCO and Precision (collectively, "Precision") do not infringe either asserted claim, and the district court correctly found this evidence "more than sufficient" to support the jury's verdict. Deere's arguments here seeking to avoid that result are largely waived and entirely without merit.

***First***, Deere's argument that the jury's noninfringement verdict was against the great weight of the evidence is divorced from the record. At trial, Precision offered unrebutted evidence, among other things, that: (1) to remove seed from the vSet2 seed meter, paddles on SpeedTube's "feeder wheels" strike the seed very briefly (between 0.003 and 0.006 seconds of contact) to project and accelerate the seed through the air toward a flighted belt; (2) Precision intentionally designed its products this way to avoid seed damage/jamming observed in earlier designs that used a direct hand-off to transfer seed from the slower-rotating seed meter to the much faster-rotating flighted belt; and (3) Deere itself, before filing this case, represented to a federal court that Precision's SpeedTube/vSet2 were "innovative," and only reversed course and accused Precision of copying and infringement after Deere's attempt to acquire Precision failed.

Because this trial evidence overwhelmingly demonstrated that SpeedTube removes seed from the vSet2 seed meter by ***projecting and accelerating*** the seed, and ***not by capturing*** the seed as claimed, Deere does not come close to showing that the jury's noninfringement verdict was against the great weight of the evidence.

***Second***, Deere cannot support its request for a new trial because the district court did not abuse its discretion in refusing to allow Deere to try to prove infringement based on statements contained in a Precision patent. As an initial matter, Deere waived this argument. In any event, the district court properly

exercised its discretion in barring the argument given the high risk of jury confusion and prejudice to Precision—particularly given the significant differences between the embodiment described in the Precision patent (solid wheel for transferring seed) and the actual SpeedTube product (feeder wheels with paddles for projecting seed).

***Third***, Deere also cannot justify its request for a new trial based on its claim construction arguments, each of which is waived, contrary to the record, and without merit. Deere argues that the district court supposedly changed its removal-by-capture construction mid-trial, yet the construction issued at *Markman* (which Deere does not contest on appeal) is the ***same*** construction the jury was instructed to apply at trial. Deere argues that the district court erred by failing to construe the term "capture," but Deere never even asked the district court to construe that term at any point before the jury's verdict. Instead, at trial the parties disputed only whether SpeedTube/vSet2 met the plain meaning of the district court's "remove seed from the seed meter by capturing the seed" construction—a classic ***fact question*** that the jury properly resolved. Deere additionally argues that the district court should have instructed the jury that the "system as a whole" could remove seeds from the seed meter. But Deere's own expert admitted that the feeder wheels are the ***only*** SpeedTube component that removes seed from the seed meter (and thus are the only component that could remove-by-capture). In any event, the district court's

construction already made clear that the "system" must remove seeds from the seed meter, with no mention of feeder wheels.

***Fourth***, the district court properly found that Deere waived its argument for judgment as a matter of law ("JMOL") of infringement because Deere failed to move for JMOL of infringement at the close of the evidence. The argument also fails in view of the substantial evidence showing that SpeedTube does not remove seed from the vSet2 seed meter by capturing the seed, but rather removes seed by projecting and accelerating it toward the flighted belt.

***Finally***, even though Deere presents no basis to grant a new trial or JMOL in its favor, the noninfringement judgment can be affirmed on alternative grounds because SpeedTube's flighted belt is not an "endless member" under a proper construction of that term.

Accordingly, Precision respectfully requests that the Court affirm the district court's judgment of no infringement.

## STATEMENT OF ISSUES ON APPEAL

1. Whether Deere's request for a new trial should be denied, where:

a. Overwhelming factual evidence concerning the operation of SpeedTube/vSet2 supported the jury's noninfringement verdict;

b. Deere waived the right to contest the district court's ruling that precluded Deere from trying to prove infringement based on an embodiment in a

Precision patent that differs in significant respects from how SpeedTube/vSet2 actually operates, and the ruling was not an abuse of discretion in any event; and

c. Deere waived its claim construction arguments, and regardless, the district court did not improperly change its remove-by-capture construction mid-trial, did not erroneously fail to resolve an alleged dispute about the meaning of "capture," and did not need to specify that components other than feeder wheels can meet the remove-by-capture requirement.

2. Whether Deere's request for JMOL of infringement should be denied as waived, and also because substantial evidence supported the jury's verdict.

3. Whether the noninfringement judgment should be affirmed on alternative grounds because SpeedTube does not contain an "endless member" as properly construed.

## STATEMENT OF THE CASE

### A. The Parties

AGCO is a leading designer and manufacturer of agricultural equipment, including seed planters. Appx40918(918:24-25).

Since its founding in 1993, Precision has been a leader in the "retrofit" seed planting industry. Precision's retrofit products allow farmers to upgrade their existing planters for a tiny fraction of the hundreds of thousands of dollars it can cost to buy a new planter. Precision's retrofit products include the SpeedTube/vSet2

products-at-issue here, which Precision announced in 2014. Appx40594-40595(594:12-595:18); Appx40788(788:8-9); Appx40792-40793(792:17-793:12); Appx40797(797:14-18); Appx40799-40800(799:9-800:4).

In 2014, Deere was still focused on selling whole planters, including its ExactEmerge planter. Deere did not sell a retrofit version of ExactEmerge until 2017—as discussed below, the same year its attempted acquisition of Precision failed and AGCO acquired Precision instead. Appx40571-40572(571:2-572:10); Appx40572-40573(572:24-573:6); Appx40799(799:6-11).

### B. Technology Background

The asserted ’663 and ’955 patents relate to planters used to plant seeds. Appx183(1:12-27). In a typical configuration shown below, a planter (red) is pulled by a tractor (yellow):




Appx7092 (annotated); Appx40793-40794(793:21-794:2). The planter includes a "main hopper" (green) that holds seeds and multiple "row units" (blue) that receive seeds from the main hopper. Within each row unit, a "seed meter" (not shown) separates out individual seeds, and after the seed is subsequently removed from the seed meter, it passes through the remainder of the row unit and is deposited into the ground. Appx40794(794:6-14); Appx40972(972:8-16); Appx184(3:19-26).

Before the asserted patents, there were many prior art techniques to deliver seeds from a seed hopper to a seed meter to the ground. For instance, it was known that seed could be dropped directly from the seed meter to the ground or from the seed meter into a hollow "seed tube" that guided the seed to the ground. Appx183(1:50-56); Appx51025(1:56-61, 2:27-36). As shown below in a 2004 prior

art Precision patent, it also was known that seed (orange) could be transferred from a seed meter (blue) to a “flighted belt (red) that would then convey seed to the ground as the belt rotated:



Fig. 2

Appx51004(annotated); Appx2796; Appx51010-51012(4:36-42, 5:53-65, 6:39-43, 7:32-43); Appx40972-40973(972:24-973:25); Appx183(1:50-2:19).

The prior art also included multiple mechanisms for removing seed from seed meters. For example, U.S. Patent No. 4,029,235 (“Grataloup”), issued in the 1970s,

describes a seed meter (blue) that holds seed (orange), and a rotary wheel (yellow) that removes seed from the seed meter by making contact with and dislodging the seeds.

FIG.6




Appx51023(annotated); 51024; Appx51018(Abstract); Appx51025(1:4-5, 1:57-61, 2:3-36, 2:65-3:9); Appx51026(3:42-4:49); Appx40984-40986(984:23-986:19).

## C. The Asserted Patents

### 1. The Alleged Prior Art Problem/Solution

The asserted patents, which share a common specification,[1] allege that prior art systems could not space seeds with sufficient accuracy/uniformity because they failed to strictly control the movement of seed from the time it is removed from the seed meter until its delivery to the ground. Appx183(1:50-2:19). For example, the patents claim that prior art systems involving a "gravity drop" of seed after removal from the seed meter caused inaccurately-spaced seeds. Appx183(1:50-51, 1:60-65, 2:17-19).

The asserted patents purport to solve this alleged "problem" by describing a system that removes the seed from the seed meter by "capturing" it—i.e., seed is captured at the point of its removal from the seed meter. Appx183(2:23-24) ("The present invention provides a seed delivery system that removes the seed from the seed meter by capturing the seed."). Once removed, the seed's movement is then controlled through discharge to the ground, as shown below in Figure 3's "seed delivery system of the present invention":

[1] Citations herein are to the '663 patent.




Appx5859; Appx175(Fig. 3) (annotated); Appx183(2:46-47). In operation, seed meter 50 (blue) contains apertures 52 that, when the seed meter rotates (54), carry individual seeds 56 (orange) received from the seed hopper (not shown) to loading wheel 86 (yellow). Appx184(3:37-45). At nip 88, brush belt 64 (the "endless member"), which contains "bristles" or "other material types [that] can be used to grip the seed," "removes the seed from the seed meter ***by capturing the seed***."

Appx183(2:23-24);[2] Appx186(7:25-31); Appx185(5:4-5) ("With the delivery system 28, the ***seed is captured*** by the delivery system to remove the seed from the seed meter."); Appx184(4:26-27) ("[B]ristles … close upon, and ***capture the seeds*** therein"). Seed then remains "***captured*** or entrapped ***in the bristles***" as the belt rotates, until the seed reaches lower opening 78, where it is released from the bristles and discharged to the ground. Appx184(4:20-38). The patents explain that while the endless member "has been described as being a brush belt with bristles," Appx186(7:25-26), it can be any material that grips the seed: "While brush bristles are the preferred embodiment, and may be natural or synthetic, other material types can be used to grip the seed such as a foam pad, expanded foam pad, mesh pad or fiber pad." Appx186(7:25-31).

The patents assert that this removal-by-capture approach improves planting accuracy. Appx183(2:32-38) ("[C]ontrolled descent from the point at which seed is removed from the meter to a point very near the bottom of the trench … reduces seed spacing variability."); Appx185(5:4-11) ("From the seed meter to the discharge, the seed travel is controlled by the delivery system, thus maintaining the seed spacing relative to one another.").

---

[2] In this brief, all bold/italics emphasis is added.

### 2. The Asserted Claims/Claim Construction

Two asserted claims were tried to verdict: claim 1 of the ’663 patent and claim 20 of the ’955 patent. Among other things, ’663 claim 1 requires “a seed delivery system,” Appx186, and ’955 claim 20 (which depends from claims 16 and 19) requires “[a] method of delivering a seed,” Appx202-203. Both claims also require an “endless member” to deliver seed to the ground. Appx186; Appx202-203.

#### *a. “Seed delivery system”/“Method of delivering seed”*

At *Markman*, the district court construed “seed delivery system” (’663 claim 1) and “method of delivering a seed” (’955 claim 20) as “apparatus/system/method that ***removes seed from the seed meter by capturing the seed*** and then delivers it to a discharge position.” Appx125. That construction was consistent with the specification’s “Summary of the Invention” section stating that “[t]he ***present invention*** provides a seed delivery system that removes the seed from the seed meter by capturing the seed.” Appx183(2:23-24); Appx125. Deere initially opposed that construction (Appx2010-2012) but does not contest it on appeal.

At *Markman*, Precision also argued, on disclaimer grounds, that the “seed delivery system” and “method of delivering a seed” requirements should be further construed to exclude systems that allow seed to drop after its removal from the seed meter and before discharge to the ground—given the specification’s criticism of

systems with "a gravity drop between the seed meter and the brush wheel which produces variation in seed spacing." Appx183(2:14-19, 1:50-2:3).[3] The district court rejected that disclaimer argument. In its *Markman* order, the district court therefore construed the "seed delivery system" terms using the bold language below (yellow), and also used the "No disclaimer …" language below to reject Precision's separate disclaimer argument (blue):

---

[3] In subsequent IPR proceedings, Deere and its expert in this case, Dr. James Glancey, argued that a prior-art arrangement did not meet the claims because "seeds would ***necessarily drop*** some distance from its release position to the belt," unlike in the asserted patents where the seed is "capture[d] and retain[ed]" such that there is "***no chance*** for a gravity drop" and "***no*** gravity drop." Appx3173(58:12-21, 59:15-22); Appx3162-3163(284:18-285:11); Appx3165(298:7-18) ("[T]he ***seed is allowed to drop*** through the dropping zone. So the seed is not retained. The paddlewheel does not retain, capture and retain the seed."); Appx3173(58:12-21, 59:15-22) (arguing no invalidity because "seeds would ***necessarily drop some distance*** from its release position to the belt"). Precision asked the district court to reconsider its no-disclaimer ruling based on these statements, Appx3142-3143; Appx3145-3147; Appx3153-3154, but that motion was denied, Appx3234-3235.

| TERM | PATENT(S) / CLAIM(S) | COURT'S CONSTRUCTION |
|---|---|---|
| **"seed delivery system" /**<br><br>**"delivery system" /**<br><br>**"seed delivery apparatus" /**<br><br>**"method of delivering a seed"** | '663 Patent: Claims 1 and 6<br><br>'199 Patent: Claims 1 and 5<br><br>'429 Patent: Claims 19 and 20<br><br>'955 Patent: Claims 19, 20<br><br>'924 Patent: Claims 12, 15<br><br>'906 Patent: Claims 4 and 6<br><br>'031 Patent: Claims 8 and 16<br><br>'173 Patent: Claim 6<br><br>'998 Patent: Claim 3<br><br>'799 Patent: Claim 2<br><br>'502 Patent: Claims 14, 19 and 22 | For '663, '199, '429, '955, '924, '906, '031, '173 patents:<br>**"apparatus / system / method that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position"**<br><br>No disclaimer of a seed delivery apparatus / system / method that allows for seeds to drop by gravity between the seed meter and discharge.<br><br>For '799, '998, '502 patents:<br>**Plain and ordinary meaning.**<br><br>No disclaimer of a seed delivery apparatus / system / method that includes a belt with flights. |

Appx125 (annotated). After *Markman*, Deere argued that "[n]o further construction of '[seed] delivery system' is required.'" Appx5175.

In a subsequent IPR involving one of the asserted patents, Deere told the Patent Office that "[t]he district court has made the following claim constructions … 'Seed delivery system' means a 'system that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position'"—without mention of the "No disclaimer" language in the district court's *Markman* order. Appx5200; Appx45-46. Likewise, in a different litigation involving the asserted patents, Deere proposed using the district court's construction from this case—again without including the "No disclaimer" language. *Kinze*, Dkt. 167 at 13-14; *id.*, Dkt. 277 at 27-28, 39-40.

***b. "Endless member"***

At *Markman*, Precision also argued that the term "endless member" means "a brush belt with bristles, or belt with other materials, that grip the seed" based on (1) the specification's use of this precise language in describing the endless member "of the delivery system," (2) the fact that all disclosed embodiments use a brush belt as the endless member to keep seeds captured through the point of discharge to the ground, and (3) the overall purpose of the claimed invention to control the movement of seeds as they are delivered from the seed meter to the ground. Appx2442-2447.

The district court adopted Deere's broader construction of "endless member" as "a continuous conveyor forming a loop, such as a belt or a chain." Appx124.[4]

### D. Precision's SpeedTube and vSet2 Products

At trial, Deere accused Precision of infringing the '663 and '955 patents based on the SpeedTube/vSet2 products: at a high level (1) vSet2 (below left) is a seed meter that takes individual seeds from a seed hopper (i.e., it "singulates" them), and rotates the seed to a point where it is removed; and (2) SpeedTube (below right) uses its feeder wheels to remove seed from the vSet2 seed meter and then delivers the seed to the ground:




**vSet2**




**SpeedTube**

Appx51038(annotated); Appx51037(annotated); Appx40794-40795(794:15-795:7).

---

[4] The district court viewed its ruling on this issue as a close call. Appx38116-38118(116:16-118:5); Appx38213-38214(213:20-214:9).

In 2004, the Patent Office granted Precision U.S. Patent No. 6,681,706 ("'706 patent") on a belt design that used a series of "flights" to carry individual seeds to the ground. Appx51002. When Precision decided to use its flighted belt design for SpeedTube, its engineers initially had difficulty reliably and safely getting seeds from the seed meter, which rotates at 1 mph, to the flighted belt, which can rotate 10 times faster. Appx40855-40857(855:4-857:19); Appx41001-41002(1001:20-1002:3); Appx40999-41000(999:11-1000:6); Appx40863-40864(863:11-864:2). As shown below, Precision's engineers developed a variety of designs over their development process seeking to address this problem.




Appx51032.

As one example, Precision tried a "direct handoff" approach that removed seed directly from the seed meter into the flighted belt:




Appx7113. But that approach led to seed damage/jamming at the handoff point, in part because the flighted belt rotated so much faster than the seed meter. Appx40859-40861(859:8-861:11); Appx41002-41003(1002:12-1003:12); Appx7572; Appx7113; Appx51036.

To overcome these issues, Precision engineers ultimately developed a design that allowed the speed of the seed to more closely match the speed of the flighted belt—removing the seed from the meter by ***projecting and accelerating*** the seed. Appx40856-40857(856:22-857:19); Appx41001-41002(1001:23-1002:2); Appx40989(989:8-24); Appx41007(1007:9-12); Appx51037. To do so, Precision developed a new design that used two feeder wheels with paddles, as shown below, to project and accelerate the seed as it is removed from the seed meter:



Appx7107; Appx40874(874:2-22); Appx40866(866:18-25).

As confirmed by the still images below taken from slow-motion video, SpeedTube's feeder wheels remove seed (orange) from the vSet2 seed meter by striking the seed (first by a paddle on one wheel (red), and then by a paddle of the other (not visible), as shown below:



Appx50120(annotated).

During this process, the feeder wheels' paddles (1) contact the seed for between 0.003 and 0.006 seconds—100 times less time than an eye blink, and (2) project and accelerate the seed from 1 mph as it is removed from the seed meter to approximately 9 mph as it projects through the air toward the flighted belt:



Appx50120(annotated); Appx40871(871:4-13); Appx40874(874:2-21); Appx40875-40876(875:8-876:3); Appx40971(971:4-14); Appx40989-40990(989:4-990:21); Appx40991-40994(991:4-994:2); Appx40994-40996(994:24-996:7); Appx40996-40997(996:11-997:10); Appx40997(997:11-19); Appx7537; Appx40998-40999(998:12-999:7).

When a seed eventually reaches the flighted belt, it strikes the belt (below, left), ricochets back toward the feeder wheels (center), and then enters a flight compartment on the belt (right):


**Seed Strikes Belt**


**Seed Ricochets**


**Seed Enters Flight**

Appx50120(annotated); Appx41000-41001(1000:21-1001:1). The seed then rotates with the belt (during which the seed freely moves around inside the flight compartment) and is deposited into the ground. Appx50120.

Outside of litigation, Deere repeatedly criticized how SpeedTube removes seed from the seed meter, including by calling it "error" prone. Appx51095; Appx40547-40550(547:19-550:21).

### E. Deere's Failed Attempt to Acquire Precision and Its "Innovative" SpeedTube/vSet2 Products

Shortly after Precision announced SpeedTube in 2014, Deere executives internally discussed plans to "aggressively target Precision Planting" and "Kill Precision Planting." Appx40616-40618(616:15-618:2); Appx51016. In 2014-2015, Deere obtained and performed teardowns of SpeedTube/vSet2, but said nothing about any alleged infringement, including to Precision. Appx40598(598:18-23); Appx40809(809:18-25). Instead, in 2015, Deere described Precision as a "leading designer and manufacturer of retrofit [products]," and tried to acquire Precision and

its products, including SpeedTube/vSet2. Appx40596-40597(596:15-597:22); Appx40600-40601(600:16-601:18); Appx51034-51035.

For that attempted acquisition, Deere conducted years of diligence, which included analyzing Precision's products, but still said nothing about any alleged infringement. Appx40601-40602(601:19-602:10); Appx40804-40805(804:15-805:11); Appx40809(809:18-25). To the contrary, in April 2017, Deere represented to a federal court that Precision's products were "***innovative***." Appx40806-40809(806:22-809:1); Appx51001. Shortly thereafter, however, Deere's attempt to acquire Precision failed and, in July 2017, AGCO announced its acquisition of Precision. Appx40602(602:15-17); Appx40810(810:1-25); Appx40932(932:9-11); Appx51029. Deere accused Precision (and AGCO) of infringement for the first time only sixteen days later, and filed this lawsuit shortly thereafter. Appx40811(811:7-24); Appx40932(932:9-17); Appx51039; Appx5001.

### F. The District Court's Denial of Deere's Summary Judgment Motion

Before trial, Deere moved for summary judgment of infringement of claim 1 of the '663 patent, arguing that "SpeedTube's two wheels remove the seed from the vSet2 seed meter by capturing the seed." Appx3256-3257. Precision explained in response that SpeedTube's feeder wheels remove seed from the seed meter by projecting and accelerating it toward the flighted belt—not by capturing it, as claimed. Appx3923-3925. The district court denied Deere's motion because "a

rational juror could plausibly conclude that a seed is removed by projection as opposed to by capture." Appx3982.

### G. The Jury's Noninfringement Verdict

At trial, Deere accused Precision of infringing claim 1 of the '663 patent and claim 20 of the '955 patent based on SpeedTube/vSet2. In response, Precision offered extensive evidence demonstrating that, rather than remove seed from the seed meter by capturing it as claimed in the asserted patents, SpeedTube's feeder wheels remove seed from the vSet2 seed meter by projecting and accelerating the seed toward the flighted belt.[5]

That evidence included testimony from Ian Radtke, the lead designer of SpeedTube, who explained in detail how SpeedTube/vSet2 work and gave an in-court demonstration of their operation. He also explained how Precision engineers independently developed SpeedTube/vSet2, and that they designed SpeedTube's feeder wheels to project and accelerate seed to avoid the seed damage/jamming observed in earlier prototypes that used a direct hand-off approach to transfer seed from the seed meter to the faster-moving flighted belt. Appx40856-40864(856:18-857:19, 858:24-859:5, 859:8-864:2); Appx40871-40875(871:4-13, 872:22-873:25,

---

[5] Contrary to Deere's claim, Br. 25, Precision did not argue noninfringement because the asserted claims exclude gravity drop systems (the disclaimer argument that the district court rejected at *Markman*). Precision focused its noninfringement defense entirely on the removal-by-capture requirement.

874:2-21, 875:8-876:3); Appx41001-41003(1001:23-1002:2, 1002:12-1003:12); Appx7572; Appx50340; Appx51036; Appx42-43. He analogized this operation to how a car can more easily merge onto a highway after using an acceleration lane to reach the approximate speed of other cars already on the road (unlike Precision's earlier "direct handoff" design that resulted in seed damage/jamming, which was comparable to merging onto a highway from close to a full stop). Appx40856-40857(856:18-857:19).

Precision also offered expert testimony from Dr. Mark Fleming, an engineering consultant and adjunct professor at Northwestern University with decades of experience in the seed planting field. Appx40967-40969(967:24-969:3). Using a specialty camera, Dr. Fleming generated slow-motion video that permitted jurors to observe how as many as 30 seeds per second move through SpeedTube and vSet2: i.e., (1) SpeedTube's feeder wheels remove seeds from the vSet2 seed meter by very briefly striking the seed (first by one wheel, and then the other), with contact lasting only 0.003 to 0.006 seconds; (2) that removal projects and accelerates the seed from 1 mph to 9 mph and then it travels through the air towards the flighted belt; and (3) the seed then ricochets back toward the seed meter before entering a flight in the belt for delivery to the ground. Appx40871(871:4-13); Appx40874-40876(874:2-21, 875:8-876:3); Appx40971(971:4-14); Appx40989-41001(989:4-

990:21, 991:4-994:2, 994:24-997:10, 998:12-999:7, 1000:21-1001:1); Appx41081-41082(1081:21-1082:2); Appx50120; Appx41-42.

Deere's technical expert, Dr. James Glancey, admitted to this operation on cross-examination. Appx40511(511:16-22) ("SpeedTube feeder wheels are the component that removes seed from the seed meter."); Appx40512(512:3-6) (one feeder wheel strikes the seed "after" the other, not "simultaneously"); Appx40512(512:7-18) (feeder wheels "propel" and "accelerate" seed at "a very high velocity"); Appx40512-40513(512:19-513:8) (feeder wheels "contact the seed for only approximately three to six milliseconds," "a whole lot faster than the blink of an eye"); Appx40513(513:9-21) ("feeder wheels then lose contact with the seed before the seed enters the flighted belt"); Appx40513(513:22-24) ("when the seeds hit the flighted belt, they ricochet [or bounce] back towards the feeder wheels").

In his testimony, Dr. Fleming compared the operation of SpeedTube/vSet2 to the asserted claims and explained there is no infringement—because unlike the removal-by-capture approach required by the asserted claims, SpeedTube removes seed from the vSet2 seed meter by projecting and accelerating the seed toward the flighted belt (without any capture). Appx40990(990:15-21); Appx40995-40996(995:6-996:1).

For its part, Deere relied on Precision high-level marketing materials saying that SpeedTube's feeder wheels "grab," "pluck," "take," or "pull" seeds. *E.g.*,

Appx40419-40421(419:10-421:15). But Precision explained to the jury that, regardless of these marketing materials, which were not designed to be technically precise, proof of infringement requires comparing the asserted claims to how SpeedTube/vSet2 ***actually work***—and the overwhelming evidence showed that SpeedTube removes seed from the vSet2 seed meter by projecting and accelerating the seed, not by capturing it. *E.g.*, Appx40192(192:3-13); Appx40814-40815(814:14-815:17); Appx40840(840:2-7); Appx40875-40876(875:2-876:3); Appx40894-40896(894:6-896:17); Appx41005(1005:1-16); Appx41229-41230(1229:2-1230:11).

Deere also attempted to prove infringement by relying on embodiments described in Precision's U.S. Patent No. 8,985,037 ("'037 patent"), which Deere claimed that Precision had admitted in an interrogatory response describes SpeedTube's feeder wheels. Appx40902(902:7-13); Appx40898-40899(898:13-899:7); Appx7309. The district court properly prevented Deere from using the '037 patent in this manner, finding that the interrogatory response only referred to the ***general*** concept of feeder wheels—not SpeedTube's actual feeder wheels. Appx40902(902:2-13); Appx61-64. Allowing Deere to rely on the patent in an effort to prove infringement also would have been confusing to the jury and prejudicial to Precision given that, as shown below, among other differences, the

’037 patent only describes using ***solid*** wheels (yellow), while SpeedTube uses two feeder wheels (red), each ***with paddles*** used to project and accelerate seeds:




**’037 Patent**



**SpeedTube**

Appx7345(annotated); Appx51037(annotated).

The district court initially allowed Deere to show the jury the “No disclaimer” language from the *Markman* order rejecting Precision’s argument that Deere had disclaimed systems involving a gravity drop. Appx40145(145:18-20); Appx40394(394:6-18); Appx40430-40431(430:20-431:5); Appx40551-40552(551:17-552:10). Because that language was not part of its “remove seed from the seed meter by capturing the seed” construction, however, the district court precluded Deere from doing so again, including to prevent jury confusion. Appx41030-41032(1030:10-1032:9). At the same time, the district court told Deere that it still could make the factual argument that SpeedTube/vSet2 meet the removal-

by-capture requirement, even if a "free-fall" occurs after removal, and Deere did just that. Appx41031(1031:2-4); Appx41204(1204:12-13); Appx41032(1032:1-4); Appx40410(410:10-13); Appx44-52.

Before the jury charge, Precision moved for JMOL, including on noninfringement and conditional invalidity grounds. Appx6792. In contrast, Deere never moved for JMOL on ***any*** issue—including infringement—before the jury's verdict.

The jury found no infringement of either asserted claim. Appx72-73; Appx6815.

### H. The District Court's Post-Trial Rulings

After trial, Deere filed a motion seeking JMOL, a new trial, and/or to alter the judgment—all of which the district court rejected as waived and/or wrong on the merits in a comprehensive 65-page decision. Appx4302; Appx4308; Appx2-68.

***First***, the district court rejected Deere's claim that the district court had changed its removal-by-capture construction mid-trial. The district court noted that it "gave only one construction" at trial, which "was verbatim the construction of the seed delivery system terms [it] made before trial," and that "Deere provide[d] no record citations to support its assertion … because the assertion ***is simply not true***." Appx44-51.

Deere also argued that the district court failed to resolve a purported claim construction dispute between the parties about the meaning of "capture." But the district court found that (1) Deere never identified "capture" as requiring construction, and thus waived the argument, and (2) there was no need to construe the term because the parties did not dispute its meaning, and instead "simply disputed [as a factual matter] how the construed claims should be applied to the accused devices." Appx52-56.

***Second***, Deere sought JMOL or a new trial on noninfringement. The district court found that JMOL argument was waived because Deere failed to move for JMOL of infringement before the jury charge. The district court also found that Deere's evidence-based arguments failed on the merits because the trial record was "more than sufficient to justify a finding of noninfringement." Appx39-43.

***Finally***, the district court rejected Deere's objections to jury instructions, evidentiary rulings, and invalidity arguments as lacking merit and failing to show that Deere suffered prejudice justifying a new trial. Appx60-66.

After denying Deere's post-trial motions,[6] the district court entered final judgment. Appx1.

---

[6] The district court (1) denied as moot Precision's conditional motion seeking JMOL of invalidity or a new trial on validity, Appx7496; Appx7502; Appx7641, and (2) dismissed Precision's invalidity counterclaims "without prejudice," Appx67. It also

## SUMMARY OF THE ARGUMENT

Based on its evaluation of a voluminous factual record, the jury determined that Precision did not infringe either asserted claim, and the district court's methodical 65-page ruling correctly rejected Deere's post-trial arguments as largely waived, meritless in each instance, and contrary to the extensive evidence, which was "more than sufficient" to support the jury's verdict. Nothing in Deere's appeal brief changes that result.

1. The district court correctly denied Deere's motion for a new trial.

***First***, Deere cannot meet its burden to show that the jury's verdict was against the great weight of the evidence. The jury received extensive evidence directed to SpeedTube/vSet2—including (1) a live demonstration and unrefuted fact testimony from Mr. Radtke about how the products were developed and operate, (2) expert testimony from Dr. Fleming, who used slow-motion video to show the jury how, unlike the removal-by-capture approach required by the asserted claims, SpeedTube removes seed from the vSet2 seed meter by projecting and accelerating the seed toward the flighted belt, and (3) admissions from Deere's own expert witness with respect to how seed moves through SpeedTube/vSet2. As the district court correctly found, this evidence was "more than sufficient" to support the jury's verdict.

---

dismissed Deere's contributory infringement, willfulness, and damages arguments as moot given the jury's verdict. Appx66.

On appeal, Deere does not present any argument requiring a different result. In fact, nearly all of its arguments were waived, as the district court found, and otherwise rest on meritless claims that: (1) the district court did not sufficiently assess the evidence, despite a thorough 65-page decision in which it carefully did just that; (2) the jury was left to construe disputed claim terms for itself, even though there were no such disputes and the jury only decided the factual question of whether SpeedTube/vSet2 meet the asserted claims, and (3) Precision supposedly admitted that SpeedTube's feeder wheels "capture" seed, even though that was the key dispute at trial and the evidence confirmed they do not. None of these arguments justifies a new trial.

***Second***, the district court did not abuse its discretion in preventing Deere from trying to prove infringement based on Precision's '037 patent. It would have been legally improper, and also confusing and unfairly prejudicial, for Deere to argue infringement by comparing the asserted claims to Precision's '037 ***patent*** instead of to its SpeedTube/vSet2 ***products***—particularly because the '037 patent describes using solid wheels that are very different from SpeedTube's paddle-based feeder wheels.

***Third***, none of Deere's claim construction related arguments justifies a new trial. Deere waived any argument that the district court changed its construction of the "seed delivery system" terms mid-trial both by acquiescing to that construction

at the time and failing to object to it during the jury instruction process. The argument also fails on the merits given that, from *Markman* through the end of trial, the district court's construction of the "seed delivery system" terms remained unchanged. The district court did not err by refusing to add the "No disclaimer" language from the *Markman* order to its construction, as that text was never part of the construction but instead merely rejected Precision's separate disclaimer argument.

The district court also did not err by not offering a construction of "capture." As the district court found, Deere never requested that construction before the jury's verdict, thus waiving the argument. Indeed, after *Markman*, Deere affirmatively argued that no further construction of the "seed delivery system" terms was required. At trial, the parties simply disputed the ***factual*** question of whether SpeedTube/vSet2 met the plain meaning of "capture."

Deere likewise cannot justify its argument that the district court should have instructed the jury that the "system as a whole," not just SpeedTube's feeder wheels, may "capture" seed. That new argument is waived. It also should be rejected (1) as a matter of fact, given Deere's expert's admission that SpeedTube's feeder wheels are the only component that removes seed from the vSet 2 seed meter, and (2) as a matter of law, because the existing construction already correctly identified the

"system" as what must remove seeds from the seed meter, with no mention of feeder wheels.

2. The district court correctly ruled that Deere waived its ability to seek JMOL of infringement by failing to move for JMOL before the jury's verdict, and correctly held that substantial evidence supported the verdict.

3. Though the Court need not reach it, the district court's noninfringement judgment may also be affirmed on an alternative ground. Properly construed, the term "endless member" requires a brush belt with bristles, or belt with other materials, that "grip the seed," and the undisputed trial record confirms that no such endless member exists in SpeedTube, which instead uses a flighted belt that allows seeds to bounce within a flight.

**STANDARD OF REVIEW**

Denial of a motion for a new trial is reviewed only "for abuse of discretion, following the law of the regional circuit." *Pacific Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, 996 F.3d 1342, 1352 (Fed. Cir. 2021); *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019) ("We review for abuse of discretion an order denying a motion for a new trial under Rule 59.").

"Under Third Circuit law, a district court should grant a new trial only if the jury's verdict is against the great weight of evidence and either is a miscarriage of justice or cries out to be overturned," and "[t]he district court has broad discretion

in not setting the verdict aside." *Pacific Biosciences*, 996 F.3d at 1352 (quotation marks omitted). A new trial due to a claim construction error is appropriate "only where the party seeking a new trial shows that they were prejudiced by the error." *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1325 (Fed. Cir. 2012).

The Third Circuit reviews evidentiary rulings for abuse of discretion. *See Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 111 (3d Cir. 2020). "An evidentiary ruling constitutes an abuse of discretion if it is arbitrary, fanciful or clearly unreasonable," and should not be disturbed "unless no reasonable person would adopt the district court's view." *Id.* (quotation marks omitted). A district court's finding of waiver is likewise reviewed for abuse of discretion. *Kars 4 Kids Inc. v. American Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021).

This Court reviews orders denying JMOL under the law of the regional circuit, *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1164 (Fed. Cir. 2015), and "the Third Circuit reviews district court JMOL decisions *de novo*," "view[ing] the record in the light most favorable to the verdict winner, drawing all reasonable inferences in its favor." *Id.*

## ARGUMENT

### I. A NEW TRIAL IS NOT WARRANTED.

Deere argues that a new trial is required. But as detailed below, most of Deere's appeal arguments were waived, and even if considered, each fails on the

merits. Therefore, because Deere has failed to sustain its high burden to show that the jury's verdict is "against the great weight of evidence and either is a miscarriage of justice or cries out to be overturned," *Pacific Biosciences*, 996 F.3d at 1352, Deere's request for a new trial should be rejected.

### A. The Noninfringement Verdict Was Not "Against the Great Weight of the Evidence" Or "A Miscarriage Of Justice."

At trial, Precision offered extensive evidence that SpeedTube/vSet2 do not remove seed from the seed meter by capturing the seed, as required by both asserted claims, but instead remove seed by ***projecting and accelerating*** it toward the flighted belt. For example, lead SpeedTube designer Mr. Radtke gave a live demonstration of the products and unrefuted testimony about how: (1) when developing SpeedTube, Precision's engineers tested a design involving a "direct handoff" from the slower-moving seed meter to the faster-moving flighted belt, but discovered it caused seed damage/jamming, and (2) to avoid those problems, the engineers added two feeder wheels with paddles that are used to remove seed from the seed meter by projecting and accelerating the seed towards the flighted belt. Appx40856-40864(856:18-857:19, 858:24-859:5, 859:8-864:2); Appx40871-40876(871:4-13, 872:22-873:25, 874:2-21, 875:8-876:3); Appx41001-

41003(1001:23-1002:2, 1002:12-1003:12); Appx7572; Appx50340; Appx51036; *see supra* pp. 18-24.[7]

The trial evidence also included Dr. Fleming's expert analysis, including slow-motion video from his own testing that allowed jurors to see how SpeedTube's feeder wheels remove the seed from the vSet2 seed meter by projecting and accelerating it towards the flighted belt: (1) one feeder wheel contacts the seed after the other, but for only between 0.003 and 0.006 seconds; (2) during removal from the seed meter, the seed's speed increases by nearly 1,000% (from 1 mph to 9 mph) and it then travels through the air without contacting any component; and (3) after striking the flighted belt, the seed ricochets and ultimately enters a flight in the belt. Appx40871(871:4-13); Appx40874-40876(874:2-21, 875:8-876:3); Appx40971(971:4-14); Appx40989-41001(989:4-990:21, 991:4-994:2, 994:24-997:10, 998:12-1001:1); Appx41081-41082(1081:21-1082:2); Appx50120; *see supra* pp. 18-24. Deere's expert admitted on cross-examination that this is exactly how SpeedTube works. Appx40511(511:16-22); Appx40512-40513(512:3-513:24).

---

[7] The claimed "loading wheel" in the asserted patents, in contrast, was intended to ***slow*** the seed as it was removed (e.g., so it could be inserted into the bristles of a brush belt without bouncing off the surface). Appx40999-41000(999:11-1000:18).

The trial record also included evidence that, despite obtaining and analyzing SpeedTube/vSet2 in 2014/2015, Deere never claimed at the time that the products infringed. Instead, after performing that analysis, Deere tried to acquire Precision and affirmatively represented to a federal court that the SpeedTube/vSet2 products were "innovative." Appx51001; Appx40594(594:12-22); Appx40596-40597(596:15-597:22); Appx40601(601:2-6); Appx40806-40809(806:22-809:1). And contrary to its litigation claim that Precision willfully appropriated Deere's technology, Deere's own marketing materials repeatedly criticized how SpeedTube removes seed from the seed meter, including by casting SpeedTube's seed-removal process as more "error" prone than Deere's approach. Appx51095; Appx40547-40550(547:19-550:21).

In fact, Deere did not accuse Precision of infringing the asserted patents until years later in 2017—shortly after Deere's attempted acquisition of Precision had failed, and just days after AGCO announced its acquisition of Precision. Appx40598(598:18-23); Appx40600(600:5-15); Appx40602(602:1-12). This evidence further corroborated that even Deere did not view SpeedTube/vSet2 as infringing.

Because this evidence overwhelmingly established noninfringement, Deere cannot meet its burden to show that the district court abused its discretion in finding that the trial record was "more than sufficient" to reject Deere's request for a new

trial. *See, e.g.*, *TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1363-1364 (Fed. Cir. 2017) (holding expert testimony sufficiently supported jury's noninfringement verdict, even where there was competing expert testimony); *InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, 751 F.3d 1327, 1343-1345 (Fed. Cir. 2014) (holding demonstration of accused product and related testimony sufficiently supported jury's noninfringement verdict); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149-1151 (Fed. Cir. 2004) (finding jury's noninfringement verdict "not against the great weight of the evidence" where defendant presented fact and expert testimony that its products lacked a particular claim limitation: "This evidence alone is sufficient to support both the jury's finding of noninfringement and the district court's refusal to grant a new trial on the issue of infringement."); *Pannu v. Iolab*, 155 F.3d 1344, 1352-1353 (Fed. Cir. 1998) (finding jury verdict "not against the great weight of the evidence" where "jury's decision was made in the face of conflicting and contradictory evidence," including competing evidence of whether the accused products met certain claim limitations).

Deere's appeal arguments cannot overcome this extensive evidence of noninfringement.

***First***, Deere wrongly argues that "the district court never considered whether the verdict was against the weight of the evidence." Br. 45. The district court recited that standard, thoroughly evaluated the record evidence in its 65-page ruling, and

expressly found the evidence "more than sufficient to justify a finding of noninfringement." Appx37-38; Appx41-43. Deere presents no reasoned basis to treat that careful analysis as an abuse of discretion.

Deere also criticizes the district court for addressing noninfringement evidence in the JMOL section of its order, but not separately analyzing the same evidence again when addressing Deere's new-trial request. Br. 45. But Deere cites no authority that required the district court to perform its analysis in such a duplicative manner—because that is not the law. Indeed, this Court has addressed new-trial and JMOL challenges using a single, collective analysis, including rejecting new-trial requests based on a finding that "substantial evidence" supported the jury's verdict. *See Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 463-464 (Fed. Cir. 2016) (collectively addressing new-trial and JMOL challenges to noninfringement verdict and rejecting both based on finding that "[s]ubstantial evidence supports the jury's verdict"); *TVIIM*, 851 F.3d at 1363-1365 (collectively addressing and rejecting new-trial and JMOL challenges: "Because substantial evidence supports the jury's verdicts, the district court did not abuse its discretion by denying TVIIM's motion for a new trial."); *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330-1331 (Fed. Cir. 2013) (holding "the jury's non-infringement verdict was [not]

against the great weight of the evidence" because "[s]ufficient evidence supports the verdict of non-infringement").[8]

Deere cites *In re Nintendo Co.*, 544 F. App'x 934 (Fed. Cir. 2013), but that decision concerned a motion to sever, not for a new trial, and it was clear there that the district court did not consider the relevant issue. *Id.* at 939-940. Here, by contrast, the district court carefully weighed the evidence, including on the relevant question whether the removal-by-capture requirement was met. Deere's reliance on *Uniloc USA, Inc., v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) fares no better. There, the Court found that differences between the JMOL and new-trial standards were immaterial, and thus "reverse[d] the district court's grant of a new trial on infringement for the same reasons as it reverse[d] the grant of JMOL of non-infringement." *Id.* at 1310. Thus, neither decision supports finding that the district court abused its discretion in denying a new trial. Appx43.

***Second***, Deere argues that the verdict was against the great weight of the evidence because "SpeedTube's operation was factually undisputed." Br. 46. But the parties hotly disputed the factual question of whether SpeedTube's removal of

[8] Despite its complaints on appeal, Deere's own post-trial brief repeatedly conflated the two standards—providing no argument for how the court should analyze the evidence differently under either standard. *E.g.*, Appx4314; Appx4318-4322; Appx4334. It is unreasonable for Deere to criticize the district court for performing a single analysis when that is all that Deere, the movant, offered the court.

seed from the vSet2 seed meter involves capturing the seed, and Precision's abundant evidence on this point fully supported the jury's noninfringement verdict, as discussed above. *See supra* pp. 18-24, 38-41.

Deere also incorrectly asserts that "[t]he parties' dispute concerned only the *meaning* of the court's construction—i.e., what the court meant by 'removes … by capturing,'" and that the district court supposedly erred by not separately construing "capture." Br. 46-47. However, Deere never sought a construction of that term, or otherwise indicated that a dispute supposedly existed concerning its meaning, thereby waiving the argument. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 974 (Fed. Cir. 2018) (finding waiver where party did not seek further construction of term appearing in court's construction).

As explained below in Section I.C.2, the parties instead only disputed the ***factual*** question whether SpeedTube met the plain meaning of the district court's removal-by-capture construction, and the jury resolved that dispute in Precision's favor. In fact, even Deere admits this in the JMOL section of its brief: "The entire course of trial … focused heavily on ***whether AGCO-Precision's SpeedTube met the construction of 'seed delivery system' by removing seeds from the seed meter by 'capture.'*** That was not just the 'central' issue; ***it was the only issue***." Br. 74-75.

Nor did the district court state that "the jury was 'going to grapple with' ***what capture means***," as Deere claims. Br. 46. Rather, in the cited passage, the district court was referring to what the jury would do with the ***factual question*** of whether SpeedTube's feeder wheels remove seed by capture. Appx40538(538:15-16) ("The jury is going to grapple with, ***when those two loading wheels hit that seed, are they capturing it***."). Again, Deere admits this in the context of its JMOL argument: "[T]he district court identified whether SpeedTube removes by capture ***as the key evidentiary question that the jury would 'grapple' with***." Br. 75.[9]

Deere also repeatedly claims that its evidence of infringement was supposedly so compelling that summary judgment of infringement should have been granted. Br. 1, 42, 74-75. But a "denial of summary judgment on sufficiency-of-the-evidence grounds" is "unreviewable after final judgment"; a sufficiency challenge must be raised "in a post-trial motion to preserve it for appeal." *Dupree v. Younger*, 598 U.S. 729, 734 (2023). Deere thus cannot avoid its failure to move for JMOL of infringement, *see infra* pp. 64-67, by challenging the denial of summary judgment.

In any event, Deere largely just points to Precision marketing materials stating that the feeder wheels "grab," "pluck," or "take" seeds from the seed meter. Br. 15-

---

[9] Deere now says that the plain meaning of "capture" was "outside the competence of lay jurors," Br. 47; but it never asked to construe that term, which is not surprising given that the term is readily understandable to lay persons.

19, 46 & n.5, 78. And Precision's witnesses directly addressed those high-level, non-technical marketing statements at trial by putting them into context, and also provided extensive evidence demonstrating how seed actually moves through SpeedTube/vSet2—again, which was unrebutted. Appx40192(192:3-13); Appx40814-40815(814:14-815:17); Appx40840(840:2-7); Appx40875-40876(875:2-876:3); Appx40895-40896(895:7-896:17); Appx41005(1005:1-16); Appx41229-41230(1229:2-1230:11). Deere cannot demand a new trial simply because, after considering all that evidence, the jury found no infringement. *See Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir. 1993) (reversing grant of new trial where "the evidence was conflicting" and "we cannot conclude that the jury's resolution of those conflicts and the inferences it drew in concluding that [defendant] acted reasonably shock our conscience or are likely to have resulted in a miscarriage of justice").

***Third***, Deere claims that "[Precision's] argument was essentially that its system only 'captures' the seed briefly," and that a finding of infringement is required because "'[c]apture for a few milliseconds is 'capture.'" Br. 49-50. But that was not Precision's argument at all. Precision argued—and conclusively established with evidence—that SpeedTube's feeder wheels ***never*** capture seed (not even briefly) as it is removed from the seed meter. Instead, SpeedTube's feeder

wheels physically strike the seed to project it off the seed meter and accelerate it toward the flighted belt, without any capturing. *See supra* pp. 18-24, 38-41.[10]

Deere also claims that it is "irrelevant" what happens after SpeedTube's feeder wheels remove seed from the seed meter. Br. 51-52. But evidence that the seed only very briefly contacted the feeder wheels to accelerate the seed, and then travelled through the air without touching the feeder wheels or any other component, reinforced that the feeder wheels never captured the seed during removal in the first instance—unlike the asserted patents, which describe seed as captured at the point of removal, and remaining captured until the seed is discharged to the ground. Appx40871(871:4-13); Appx40874-40876(874:2-21, 875:8-876:3); Appx40971(971:4-14); Appx40989-41001(989:4-990:21, 991:4-994:2, 994:24-997:10, 998:12-1001:1); Appx41081-41082(1081:21-1082:2); Appx50120; Appx183(2:23-24); Appx186(7:25-31); Appx185(5:4-5); Appx184(4:20-38); *see supra* pp. 18-24. Indeed, at trial, Deere asserted that what happens to seed after its removal from the seed meter is "important." Appx40542-40544 ("[W]e don't think it's irrelevant, what happens later …. It's important.").

[10] Deere's argument suggests that ***any*** contact between the feeder wheels and seed meter constitutes "capture." But the asserted claims require capture, not just mere contact, as Deere's expert Dr. Glancey admitted. Appx40507-40508(507:19-508:10) (admitting that "mov[ing] an object by contacting it … doesn't necessarily mean you've captured it," such that pushing a child on a swing, even with two hands, does not mean the child is captured).

Further, as Deere confirms elsewhere in its brief, its expert, Dr. Glancey, testified on direct examination that SpeedTube removes seeds from the vSet2 seed meter by capturing the seed, and that "seeds remain captured" and "*under control throughout* the entire delivery system." Br. 28-29; Appx40402-40404(402:1-404:5); Appx40514(514:4-12). Precision was entitled to disprove these allegations, including by demonstrating that seeds are ***not*** captured when removed from the seed meter, and remain ***not*** captured as they travel through the air, ricochet off the flighted belt, and move around freely within flights.

***Finally***, Deere argues that even if SpeedTube's feeder wheels do not remove seed from the seed meter by capturing it, the broader "*system as a whole*" does, and it faults Dr. Fleming for "focus[ing] only on feeder wheels" and "*not* address[ing] whether the SpeedTube system removes seeds by capturing them." Br. 52-54, 69. But at trial, Dr. Glancey admitted that the "SpeedTube ***feeder wheels are the component that removes seed from the seed meter***," Appx40511(511:16-22), and he identified no other component supposedly involved in that removal process. Deere has presented no basis to disturb the jury's noninfringement verdict given the abundant evidence demonstrating that the ***only*** components in the "system as a whole" that remove seed from the seed meter are SpeedTube's feeder wheels and that they do so without capturing seed. Appx40871(871:4-13); Appx40994-40996(994:24-996:7); Appx50120.

Deere relatedly claims that "[t]he district court suggested mid-trial that its construction requires the *feeder wheels* to remove seeds by capturing." Br. 53. But the district court said no such thing. As a preliminary matter, the cited exchange (1) occurred outside the presence of the jury, and (2) involved the district court confirming that the capturing required by the asserted claims must occur ***<u>when</u> seed is removed from the seed meter***, and noting that jury confusion might result from Deere's suggestion that seed is captured ***after*** removal when later inside the flighted belt. Appx40538(538:15-23); Appx40541-40545(541:18-545:18). Further, the district court was merely repeating Deere's infringement theory that SpeedTube's feeder wheels supposedly remove seeds by capturing them. Appx40402-40404(402:1-404:5); Appx40514(514:4-12). But to be clear, the court explicitly instructed the jury that "seed delivery system" "mean[s] ***a system*** that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position." Appx41278(1278:1-16). Simply put, the district court did not misapply or misrepresent its claim construction in any way.

Therefore, Deere has presented no basis to find that the great weight of the evidence or a miscarriage of justice requires a new trial.

### B. The District Court Did Not Abuse Its Discretion In Excluding Precision's '037 Patent.

At trial, the district court precluded Deere from trying to prove infringement by relying on statements in Precision's '037 patent. Appx40902(902:2-13). Deere

now contends that this ruling was "unsupportable" and justifies a new trial. Br. 55-57. But Deere does not come close to establishing that the district court abused its discretion in making that ruling, or that the excluded evidence otherwise justifies a new trial.

***First***, Deere incorrectly argues that the district court "did not elaborate on its reasons for excluding [the '037 patent]." Br. 56-57 (citing Appx40902(902:2-13)). But in the passage Deere cites, the district court expressly stated that it was excluding the '037 patent under FRE 403 precisely because (1) infringement of the '037 patent was not at issue and (2) there was a significant risk of jury confusion and undue prejudice to Precision, and the possible need for a wasteful "mini trial" on the issue, given the key differences between the wheels described in the '037 patent and "the feeder wheels that are actually used in the accused products." Appx40902(902:2-13). That was not an abuse of discretion.

As a matter of law, the district court's ruling was fully consistent with this Court's holding that the infringement inquiry requires comparing an asserted claim ***to the accused product***—not to the accused infringer's patent or patent application that "may or may not describe the [accused] product." *See Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (2001) (affirming patent application could not be used to prove infringement because patent owner "needed to present adequate

evidence with respect to the accused product, not the content of a patent application that may or may not describe the product”).

And as a matter of fact, the district court’s ruling was fully justified in view of the material differences between (1) the ’037 patent, which discloses using solid wheels to remove seeds from the seed meter (left, yellow); and (2) SpeedTube, which uses feeder wheels with paddles to remove seed from the seed meter by striking the seed to project and accelerate it towards the flighted belt (right, red):






**’037 Patent** **SpeedTube**

Appx7345(annotated); Appx51037(annotated); *supra* pp. 20-24. It was not an abuse of discretion for the district court to conclude, in light of these significant differences (1) that jurors might be confused and Precision might be unfairly prejudiced if Deere were allowed to suggest that the statements in the ’037 ***patent*** demonstrated infringement by the SpeedTube/vSet2 ***products***, or (2) that a wasteful sideshow

minitrial might have been needed to address that confusion and prejudice. *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 457-458 (3d Cir. 1997); Fed. R. Evid. 403.

Deere's claim that Precision admitted in an interrogatory response that the '037 patent describes SpeedTube's feeder wheels is wrong. Br. 55. As the district court found, that response referred to the '037 patent as describing the ***general concept*** of feeder wheels—not the feeder wheels ultimately used in the actual SpeedTube product. Appx40902(902:2-13) ("That's not the same thing …."). And the significant differences discussed above between the wheels used in the patent and SpeedTube further confirm that the district court was correct.

***Second***, Deere suggests that the district court acted unfairly by allowing Mr. Radtke to discuss certain Precision patents (but not the '037 patent) on direct examination when discussing SpeedTube's development process, while preventing Deere from questioning him about the '037 patent on cross-examination. Br. 56-57. But as the district court found, Deere never objected to Precision's discussion of its own patents—thus waiving the issue—while Precision timely objected to Deere's improper use of the '037 patent. Appx61. Moreover, as the district court also correctly found, Precision properly discussed its other patents in connection with explaining its work to independently develop SpeedTube in response to Deere's copying allegations—not as evidence of noninfringement. Appx62-63.

***Finally***, Deere has failed to show the jury would have reached a different result even if made aware of the ’037 patent—particularly given the significant differences between the patent and SpeedTube and the extensive evidence detailed above demonstrating that SpeedTube’s actual feeder wheels remove seed from the seed meter by projecting and accelerating the seed, and without capturing it. *See Philadelphia Workforce Dev. Corp. v. KRA Corp.*, 673 F. App’x 183, 190 (3d Cir. 2016) (finding no new trial warranted where any evidentiary error was “harmless”).

### C. Deere’s Claim-Construction-Related Arguments Do Not Warrant A New Trial.

Deere’s arguments that the district court made multiple claim-construction-related errors during trial are both waived and without merit.

#### 1. The District Court Did Not Err In Declining To Add The “No Disclaimer” Language To Its Construction.

Deere maintains that the district court erred “mid-trial” when it purportedly “removed the ‘no disclaimer’ clause from its construction” of the “seed delivery system” terms. Br. 58-71. That argument fails for multiple reasons.

***First***, Deere waived this argument both by responding at the time “we’re fine with that,” Appx41030-41032(1030:10-1032:9), and by failing to object later to the lack of the “No disclaimer” language in the final jury instructions, Appx41140-41141(1140:13-1141:5). *See Power Integrations*, 904 F.3d at 974 (“It is well-settled that a party cannot reserve a new claim-construction argument for the post-trial

motion stage of litigation."); *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) ("[P]arties cannot reserve issues of claim construction for the stage of post-trial motions."); Fed. R. Civ. P. 51(c), (d).

***Second***, Deere is wrong on the merits. At *Markman*, the district court construed the "seed delivery system" terms to mean "apparatus/system/method that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position." Appx125. That was the ***identical*** construction that the district court instructed the jury to apply at trial. Appx41278(1278:3-16). Thus, as the district court found, its construction of the "seed delivery system" terms did not change ***in any way*** at trial. Appx44-51.

The district court also correctly understood that the "No disclaimer" language was ***not*** part of its construction. Appx44-51; Appx40393(393:8-10). As shown below, in its *Markman* order, the district court put the actual text of its construction in bold (yellow)—but not the "No disclaimer" language that followed (blue):

| COURT'S CONSTRUCTION |
|---|
| For '663, '199, '429, '955, '924, '906, '031, '173 patents: |
| **"apparatus / system / method that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position"** |
| No disclaimer of a seed delivery apparatus / system / method that allows for seeds to drop by gravity between the seed meter and discharge. |

Appx125 (annotated); Appx46-47. The "No disclaimer" language was simply the district court's way of rejecting Precision's disclaimer argument. Deere understood this too—as confirmed by its proposal to use the same construction in a subsequent IPR and district court litigation—both without including or even mentioning the "No disclaimer" language. Appx5200; Appx45-46; *Kinze*, Dkt. 167 at 13-14; *id.*, Dkt. 277 at 27-28, 39-40. Deere did not include the "No disclaimer" language in either

proceeding because even Deere knows it is not part of the district court's construction. It cannot prevail simply by taking the opposite position here.

Therefore, as the district court correctly found, it was not required to instruct the jury using the "No disclaimer" language that it had used to reject a separate argument and did not include as part of its construction. Appx50-51; *see MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1329 (Fed. Cir. 2005) ("A district court's Markman order is an explanation to the parties of the reasoning behind its claim construction. The court's analysis need not be part of the jury instructions."), *vacated on other grounds*, 547 U.S. 388 (2006).[11]

***Third***, Deere claims that the district court should have added the "No disclaimer" language to its construction because Precision supposedly argued at trial that SpeedTube did not infringe because the patents disclaimed a gravity drop. Br. 61-65. But Deere tellingly fails to identify any instance in the trial record where

---

[11] Deere cites *LogMeIn* and *TomTom* as suggesting no-disclaimer language "can" be part of a court's claim construction. Br. 60. Yet neither case does so. In *LogMeIn*, the Court modified a construction to specify that the claimed functions could be spread among multiple computers; it did not append to its construction that there was "no disclaimer of a system using one or more computers." *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1299-1300 & n.4 (Fed. Cir. 2012). In *TomTom*, the Court rejected the district court's finding of one disclaimer, and instead explicitly found a different disclaimer—it did not add a "non-disclaimer" to the construction, as Deere suggests. Br. 60. *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed. Cir. 2015). In any event, the mere fact that a court ***can*** include "no disclaimer" language in a construction does not mean that declining to do so is error.

Precision made that argument—***because it never did***. Precision never argued that the claims precluded any gravity drop. Instead, it merely pointed to the fact that the seeds were removed from the seed meter and projected/accelerated to the flighted belt as part of its evidence showing that there was no removal by capture. Deere cannot establish prejudice based on an argument that was never made.[12]

Deere also asserts that it was "muzzled" and "thwarted" from addressing with the jury whether SpeedTube can infringe even if seed is involved in a "free fall" after removal from the seed meter. Br. 64. That is untrue. The district court allowed Deere to highlight the "No disclaimer" language in its opening statement and with Dr. Glancey. Appx40145(145:18-20); Appx40394(394:6-18); Appx40430-40431(430:20-431:5); Appx40551-40552(551:17-552:10). And even after

[12] Deere states that Precision "explicitly argu[ed] non-infringement because 'the seed's … flying through the air, uncontacted by any component … as it's transferred down to the flighted belt." Br. 64. But Precision did not make that noninfringement argument; indeed, Deere's quotation omits the beginning of that sentence, which makes clear that Precision's point was simply that SpeedTube never captures seed when removing it from the seed meter, and the fact that seed was "in flight" right after its removal corroborated that fact. Appx41225 ("And far from being captured, the seed's actually in flight, flying through the air …."). Deere also criticizes Precision for introducing a document stating that SpeedTube has a "funneled handoff with free-fall to belt," Br. 26-27, but Precision offered that Deere marketing document—which shows even Deere believed that SpeedTube worked differently from Deere's own technology—to rebut Deere's repeated use of Precision marketing documents (including in opening statements) to argue that there was no "free fall" after SpeedTube's feeder wheels remove seeds from the seed meter. *E.g.*, Appx40547-40550(547:3-550:21); Appx40151(151:7-13); Appx40421-40422(421:16-422:21).

confirming that the "No disclaimer" language was not part of its construction, the district court told Deere that it could make the factual argument that SpeedTube/vSet2 meet the removal-by-capture requirement, even if a "free-fall" occurs after removal—and Deere did. Appx41031(1031:2-4); Appx41032(1032:1-4); Appx41204(1204:12-13); Appx40410(410:10-13); Appx51-52.

Thus, even under Deere's flawed theory that a change in the construction occurred, that change would have been harmless because Deere had more than ample ability to address the issue of "free fall" with the jury. *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-1316 (Fed. Cir. 2010) (finding no error in "trial court's supplemental definition of a claim term during trial," especially where party had "an opportunity to consider the new construction and adjust its arguments").

Deere further argues that the district court erred by failing to resolve a dispute about claim scope. Br. 61-63. As detailed above, however (1) the district court had ***already*** resolved the parties' claim scope disputes ***at Markman*** when it construed the "seed delivery system" terms and rejected Precision's disclaimer argument, (2) Deere waived any objection to the district court's exclusion of the "No disclaimer" language by expressly agreeing to that exclusion and failing to object to the final jury instructions, and (3) there was no actual dispute to resolve, as confirmed by the *Markman* order itself (which did not include the "No disclaimer" language as part

of the construction) and Deere's recitation of that construction in two subsequent proceedings, both ***without*** the "No disclaimer" language.

The district court did not err by refusing to amend its construction at trial to add the "No disclaimer" language. Appx44-52.

### 2. The District Court Did Not Need To Construe "Capture."

Deere claims that the district court erred by failing to address a supposed "ambiguity" about the meaning of "capture" as used in the district court's "seed delivery system" construction. Br. 65-67. That is wrong.

***First***, as the district court correctly found, Deere never asked to construe "capture" before the jury's verdict—and even affirmatively represented after *Markman* that "[n]o further construction of '[seed] delivery system' is required,'" Appx5175, thereby waiving the argument. Appx52-56; *see Power Integrations,* 904 F.3d at 974 (finding waiver where party did not seek further construction of term appearing in construction); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (finding waiver where party "failed to offer its proposed construction … at or prior to trial"). Deere cannot establish that waiver ruling was an abuse of discretion. *See Pacific Biosciences*, 996 F.3d at 1352; *ArcelorMittal France*, 700 F.3d at 1325.[13]

---

[13] In the IPR and other litigation involving the asserted patents, Deere proposed using the district court's construction of "seed delivery system" ***without*** any further

***Second***, the trial record shows—as the district court also found, and as Deere admitted at the time—that the parties and their experts merely disputed whether SpeedTube met the plain meaning of "capture," which presented a ***fact question*** for the jury. Appx40396(396:14-15) (Deere admitting the parties' experts were "just talking about what is the plain and ordinary meaning of 'capture'"); Appx55-56; Appx40394-40397(394:19-397:7); Appx40399-40402(399:6-402:24); Appx40990-40997(990:15-997:19); Appx41001(1001:2-9). *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-1360 (Fed. Cir. 2017) (holding jury could accept or reject competing expert testimony about whether the accused products met the plain meaning of "removably attached," including with respect to expert "opinion about whether unscrewing was needed to meet the 'removably attached' … requirement[]"); *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1311-1312 (Fed. Cir. 2017) (holding jury can choose between competing expert testimony concerning whether an accused product met a claim term's plain meaning); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 512 (Fed. Cir. 2016) (same).

Thus, Deere has no legitimate basis for its repeated representations that, at trial, "[t]he parties' dispute concerned only … what the court meant by 'removes …

---

construction of "capture." Appx5200; Appx45-46; *Kinze*, Dkt. 167 at 13-14; *id.*, Dkt. 277 at 27-28, 39-40.

by capturing." Br. 46. Again, the ***only*** dispute at trial turned on the ***factual question*** of whether SpeedTube's feeder wheels meet the removal-by-capture requirement, as Deere admits elsewhere in its brief. Br. 74 (representing "***the only issue***" at trial was "whether AGCO-Precision's SpeedTube ***met the construction*** of 'seed delivery system' by removing seeds from the seed meter by 'capture'").[14]

And contrary to Deere's claim that "[t]he jury's 'grappling' concerned only the meaning of 'capture,'" Br. 66, the district court's statement about "grappling" was directed to the same issue of fact: "The jury is going to grapple with, ***when those two loading wheels hit that seed, are they capturing it***." Appx40538(538:15-16). Again, Deere admits this elsewhere in its brief. Br. 75 ("[T]he district court identified whether SpeedTube removes by capture ***as the key evidentiary question that the jury would 'grapple' with***.").

Accordingly, Deere cannot demonstrate the need for a new trial simply because the district court did not separately construe "capture" but instead let the jury apply the plain meaning of that term. *See VLSI Tech. LLC v. Intel Corp.,* No. 22-1906, __ F.4th __, 2023 WL 8360083, at *5 (Fed. Cir. Dec. 4, 2023) (where party did not seek construction of claim phrase, court "defer[s] to the jury's view of the

[14] Deere points to testimony from Dr. Fleming concerning the type of control involved in meeting the plain meaning of "capture," Br. 64-65, but ignores that Deere's expert, Dr. Glancey, said the same thing, Appx40394-40401(394:19-401:25).

claim element unless that view is contrary to the only reasonable view of the claim element”); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 978-979 (Fed. Cir. 2021) (finding no error where district court’s construction introduced the term “random” and district court did not further construe the term, thus letting the jury apply the term’s ordinary meaning); *Lazare Kaplan Int’l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (rejecting argument that district court erred by not further construing agreed-upon construction because the “parties’ dispute concerns factual questions relating to the test for infringement and not the legal inquiry of the appropriate scope of the … limitation”).

#### 3. The District Court Did Not Err With Respect to Deere’s “System As A Whole” Arguments.

As noted above in Section I.A., there is no merit to Deere’s argument that a new trial is required because SpeedTube’s “system as a whole” allegedly removes seed from the seed meter by capturing it, Br. 67-72—an argument that is both waived and contrary to the factual record.

***First***, the district court did not abuse its discretion in finding that Deere waived this argument. Appx52-56. Deere never asked to construe “capture” before the jury’s verdict, let alone to specify that components other than feeder wheels can do the capturing; instead it represented that “[n]o further construction of ‘[seed] delivery system’ is required.’” Appx5175; Appx52-56. *See Power Integrations,* 904 F.3d at 974; *Broadcom*, 543 F.3d at 694.

Deere claims that no waiver occurred because it opposed the district court's construction of the "seed delivery system" terms "in the first instance"—i.e., ***at Markman***. Br. 70-71. But once the district court overruled that objection and construed the terms to require "remov[ing] seed from the seed meter ***by capturing the seed***," Deere was obligated to seek further construction of the "capturing the seed" requirement if thought further construction was needed. Yet, it never did, thereby waiving the argument. Appx52-56. *See Power Integrations*, 904 F.3d at 974.

Deere also claims that it would have been "futile" to ask for further claim construction because the district court allegedly said, "mid-trial, that the feeder wheels rather than the system as a whole must do the capturing." Br. 71-72. As noted above, however, the district court's reference to "feeder wheels" (which happened outside the presence of the jury) was merely confirming that the claimed capturing must occur ***<u>when</u> seed is removed*** from the seed meter (not merely later), and noting the undisputed fact that SpeedTube's feeder wheels are the ***only*** component that removes seed from the vSet2 seed meter—and, as explained above, they do so without capturing seed. Appx40541-40545(541:12-545:18); Appx41141-41143(1141:6-1143:24); Appx40147(147:20-24) ("Those loading wheels remove the seed from the metering disk, capture it, and load it into a flighted belt and deliver it to the ground."); Appx40403(403:6) ("It's removed by capture by those rotating

wheels"); Appx41205(1205:3-6). Deere does not even attempt to explain how that exchange made it "futile" to request clarification at the time if Deere thought it was needed.

***Second***, on the merits, no further clarification was needed. The construction that the district court provided to the jury says nothing about "feeder wheels," and already unambiguously provided that the "system" is what must perform the removal-by-capture requirement: "apparatus/***system***/method ***that removes seed from the seed meter by capturing the seed*** …." Appx125. Thus, beyond finding waiver, the district court also acted well within its discretion in declining to award a new trial to "clarify" something already express in the construction the jury was instructed to apply. Appx49.

Therefore, Deere is not entitled to a new trial based on any of its claim construction arguments.

## II. THE DISTRICT COURT RIGHTLY DENIED DEERE'S REQUEST FOR JMOL OF INFRINGEMENT.

Deere argues that it is entitled to JMOL of infringement because the jury purportedly lacked sufficient evidence to find no infringement. Br. 77-79. That argument should be rejected as waived and wrong on the merits.

***First***, the district court found that Deere waived the right to seek JMOL by failing to move for JMOL of infringement, Appx39-40, and Deere cannot show that was an abuse of discretion—because Deere never moved under Rule 50(a) on that

(or any other) issue. *See Lesende v. Borrero*, 752 F.3d 324, 333 (3d Cir. 2014) (holding where party failed to "move for judgment as a matter of law pursuant to Rule 50(a) … it wholly waive[d] the right to mount any post-trial attack on the sufficiency of the evidence"); *Kars 4 Kids*, 8 F.4th at 219-220 (holding "[a] post-trial Rule 50 motion can only be made on grounds specifically advanced in a motion for a directed verdict at the end of plaintiff's case," and a waiver finding on these grounds is reviewed under an "abuse of discretion" standard).

Unable to identify any instance where it moved for JMOL of infringement before the jury began its deliberations, Deere cites the district court's discussion of ***Precision's*** pre-verdict motion seeking ***JMOL of <u>non</u>infringement*** (which the district court denied). Br. 73. As the district court correctly found, Appx39-40, Deere cannot convert an opposing party request seeking ***the opposite*** of what Deere seeks here, or the district court's denial of it (which merely meant the district court found that ***a*** reasonable jury ***could*** find infringement), into a pre-verdict JMOL motion for infringement on Deere's behalf (which would have required Deere to argue that ***any*** reasonable jury ***must*** find infringement). *See Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1347 (Fed. Cir. 2010) (applying Third Circuit law and finding an opposition to plaintiff's pre-verdict JMOL motion insufficient to preserve defendant's right to move for post-verdict JMOL); *Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1356-1357 (Fed. Cir. 2014) (holding defendant's statement, made in

***opposing*** plaintiff's Rule 50(a) motion for JMOL of no anticipation, was not a Rule 50(a) motion for JMOL of anticipation); *see also Hayer v. University of Med.*, 490 F. App'x 436, 438 (3d Cir. 2012) (rejecting plaintiff's argument that it was not required to move for JMOL pre-verdict because court denied defendant's JMOL motion and it was supposedly "obvious" the court would likewise deny plaintiff's motion).

Deere also claims that its failure to comply with Rule 50(a) should be excused because it "clearly challenged the sufficiency of the evidence on the disputed issue at some point during trial." Br. 74. But Deere merely presented its infringement case at trial, just like any other plaintiff in a patent infringement trial. Nothing about Deere's conduct justifies excusing compliance with Rule 50(a).

Nor do Deere's cited cases. Unlike here, in *Gaus v. Conair Corp.*, the district court found no waiver because the defendant timely filed a Rule 50(a) motion that "list[ed] the grounds on which" the motion was based. 363 F.3d 1284, 1287 (Fed. Cir. 2004). In *Duro-Last, Inc. v. Custom Seal, Inc.*, the Court found that the plaintiff failed to satisfy Rule 50(a) because, despite filing a timely JMOL motion, it did not sufficiently raise the relevant issues in its post-trial motion. 321 F.3d 1098, 1106-1107 (Fed. Cir. 2003). And while *Dupree v. Younger* stated that "a purely legal issue resolved at summary judgment" need not be reraised at JMOL, 598 U.S. at 736, it

reaffirmed that factual sufficiency challenges like Deere's must be preserved, if at all, by a JMOL motion. *See supra* p. 45.

***Second***, beyond waiver, Deere's request for JMOL also should be denied because the district court correctly ruled that the trial evidence "was more than sufficient to justify a finding of noninfringement." Appx40-43. As explained above addressing Deere's "against the great weight of the evidence" arguments, substantial evidence at trial—including fact testimony of lead SpeedTube engineer Mr. Radke, expert testimony from Dr. Fleming, cross-examination admissions from Dr. Glancey, and slow-motion video that allowed jurors to see how seed is removed by from the seed meter—demonstrated that, unlike the removal-by-capture approach required by the asserted claims, SpeedTube's feeder wheels remove seed from the vSet2 seed meter by ***projecting and accelerating*** it toward the flighted belt. The jury also heard evidence that, despite knowing about SpeedTube/vSet2 for years, Deere did not accuse Precision of infringement but instead publicly described the products as "innovative"—until its attempt to acquire Precision failed and it claimed for the first time that those ***same*** "innovative" products were instead copies and infringing. *See supra* Section I.A.

Because this substantial evidence overwhelmingly supported the jury's noninfringement verdict, Deere's request for JMOL should be denied. *See, e.g.*, *TVIIM,* 851 F.3d at 1363-1364. Deere raises the same counterarguments that it

raised in support of its new trial request, Br. 77-79, and those arguments are unavailing for the same reasons explained above. *See supra* Section I.A.

Therefore, there is no basis to award JMOL of infringement.

### III. THE DISTRICT COURT'S JUDGMENT CAN BE AFFIRMED BECAUSE SPEEDTUBE/vSET2 DO NOT MEET THE "ENDLESS MEMBER" LIMITATION AS PROPERLY CONSTRUED.

The noninfringement judgment could also be affirmed on the alternative ground that a proper construction of the term "endless member" requires a brush belt or other material that "grip[s] the seed," and SpeedTube's flighted belt—which allows sees to bounce around within flights—does not meet that requirement.

The district judge acknowledged that he viewed the construction of "endless member" as a close call. Appx38116-38118(116:16-118:5); Appx38213-38214(213:20-214:9). The court ultimately construed "endless member" as "a continuous conveyor forming a loop, such as a belt or chain." Appx124. Precision respectfully submits that was error. The intrinsic record confirms that "endless member" instead should have been construed as "a brush belt with bristles, or belt with other materials, that grip the seed" (as Precision proposed), and noninfringement can be affirmed under that construction because SpeedTube uses a flighted belt that indisputably does not "grip" the seed in any way.

This Court has repeatedly instructed that a claim construction analysis begins with "the intrinsic evidence … which is usually dispositive," *Sunovion Pharms., Inc.*

*v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013), and that "the specification is 'the single best guide to the meaning of a disputed term,'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc). Here, the specification confirms that, in the asserted patents, the term "endless member" requires "a brush belt with bristles, or a belt with other materials, that grip the seed."

Specifically, in a section describing "***[t]he delivery system of the present invention***," Appx186(7:3-31), the specification of the asserted patents describes "[t]he endless member of the delivery system" using the precise wording contained in Precision's proposed construction:

> ***The endless member of the delivery system has been described as being a brush belt with bristles***. In a broad sense, the bristles form an outer periphery of contiguous disjoint surfaces that engage and ***grip the seed***. While brush bristles are the preferred embodiment, and may be natural or synthetic, ***other material types can be used to grip the seed*** such as a foam pad, expanded foam pad, mesh pad or fiber pad."

Appx186(7:25-31).

Similarly, the specification repeatedly represents that an endless member with "brush belt bristles" (or "other material types" used "to grip seed") is what performs the capturing function that supposedly solves the prior-art problem of improper seed spacing. Appx184(4:20-31) ("seeds are ***captured or entrapped in the bristles***" that "close upon, and ***capture*** the seeds"); Appx186(7:21-24) ("seed is ***captured*** in the brush ***bristles***"); *id.*(7:27-28) ("***bristles*** … engage and ***grip*** the seed").

In fact, ***every*** specification figure shows (or the accompanying text describes) the endless member as a brush belt with bristles that grip seed, such as in Figure 3 below—which the patents describe as depicting "the seed delivery system of the present invention," Appx183(2:46-47):




Appx5859; Appx175(Fig.3) (annotated); Appx183(2:46-47); Appx177-182(Figs. 5, 8-11); Appx185(5:44-54) ("***the brush belt***"); *id.*(6:37-52) (seeds carried "***into the***

***bristles of the brush***"); *id.*(6:53-63) ("the ***brush delivery system***"); *id.*(6:63-67) ("the ***brush bristles*** … capture seed therefrom"); Appx186(7:5-24) ("a ***brush belt***"). *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1316-1318 (Fed. Cir. 2006).

The intrinsic record thus confirms that the claimed endless member is a brush belt with bristles, or belt with other materials, that grip the seed. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (affirming construction consistent with "every figure that depicts the disputed connection"); *Saffran v. Johnson & Johnson*, 712 F.3d 549, 560 (Fed. Cir. 2013) (affirming construction supported by "consistent usage in the specification" and "every embodiment").

By contrast, Deere's proposed construction of "endless member," which the district court adopted, was "[a] continuous conveyor forming a loop, such as a belt or a chain." Appx5151; Appx123. This generic, overbroad construction has no support in the patent specification. For that reason, Deere relied primarily on extrinsic evidence outside the seed planting field, including, for example, a snowmobile patent. Appx2436-2437; Appx2464. But such extrinsic evidence cannot overcome the specification's clear guidance as to the meaning of "endless member." *See Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016) ("Legal error arises when a court relies on extrinsic evidence that contradicts the intrinsic record.").

Moreover, Deere's proposed construction was contrary to Deere's own statements distinguishing the claimed invention from the prior art. The patents explain that insufficient seed control results in seed-spacing variation, Appx183(1:50-2:3), criticize prior-art flighted belt systems as providing insufficient control of seeds as they are delivered, *id.*(2:4-19), assert that the "present invention" solves that problem by restricting the movement of seed from the seed meter to the ground, *id.*(2:23-38), and describe using an endless member to "grip the seed," Appx186(7:25-31). Yet, Deere's construction—directed to any continuous belt or chain, with no requirement for the endless member to grip or control the seed at all—covers systems that provide no control over the seed at all as it is delivered to ground:

**Deere's Patents**




**Deere's Construction**



Appx2455. Deere's proposed construction thus improperly broadens the claims to cover systems—including belts with no means of controlling the descent of seeds—that do not provide the purported benefit (improved seed spacing) of the claimed invention. *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008) (rejecting construction that read out purpose of invention because a "patent must be read in light of the specification's consistent emphasis on this fundamental feature"); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1313 (Fed. Cir. 2007) (holding courts should construe terms to "align[] with the patent's description of the invention").

Deere also argued that Precision's construction was wrong because certain dependent claims (of patents no longer asserted) explicitly require a brush belt. Appx2437-2439. But Precision's construction does not limit "endless member" to a brush belt—because it includes a brush belt with bristles, ***or belt with other materials, that grip the seed***, claim differentiation does not apply. Deere also argued claim differentiation based on an independent claim from an unasserted patent requiring "a single endless member … having a gripping portion to capture and grip the seed." Appx2437-2439. But this claim from a different patent is different in scope from the asserted claims, including because it does not recite a loading wheel or similar structure; thus, it also does not involve claim differentiation. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016) (declining to apply

claim differentiation where asserted claim "differs from the other independent claims in many other ways, and so the claims 'are not otherwise identical in scope'"); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) (same).

Deere also pointed to a statement in the '663 patent file history where it agreed that Figure 2 of Precision's '706 flighted-belt patent shows an endless member. Appx2440-2441. But Deere's own representations during prosecution "cannot 'enlarge'" the claims, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), or "enlarge the content of the specification," *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003). Accordingly, that comment made about ***Precision's patent*** cannot overcome the asserted patents' repeated statements regarding the importance of the endless member capturing/gripping seeds to control their descent. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1375 (Fed. Cir. 2010) ("[P]rosecution history comments cannot trump the plain language of the claims and the direct teaching of the specification."); *Honeywell*, 452 F.3d at 1319 ("Where, as here, the written description clearly identifies what his invention is, an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight.").

Under the proper construction of "endless member" as "a brush belt with bristles, or belt with other materials, that grip the seed," the noninfringement judgment should be affirmed. The undisputed evidence at trial showed that SpeedTube's flighted belt is not a brush belt with bristles and does not "grip" seeds, which instead bounce around randomly in the compartments of the flighted belt as they descend to the ground. Appx41000-41001(1000:21-1001:1); Appx50120; Appx40513(513:22-24); Appx2441 n.4.

## CONCLUSION

The judgment of noninfringement on the '663 patent and '955 patent should be affirmed.[15]

[15] If the Court accepts any of Deere's arguments (which it should not), remand would be necessary to address Precision's conditional invalidity arguments and equitable defenses, among other issues.

Respectfully submitted,

/s/ Michael J. Summersgill

MICHAEL J. SUMMERSGILL
RICHARD W. O'NEILL
JORDAN L. HIRSCH
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

HEATH A. BROOKS
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-6000

*Attorneys for Defendants-Appellants AGCO Corporation and Precision Planting LLC*

December 4, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 13,823 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Michael J. Summersgill
MICHAEL J. SUMMERSGILL
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

December 4, 2023