**No. 23-1811**

# United States Court of Appeals for the Federal Circuit

DEERE & COMPANY,
*Plaintiff-Appellant*,

v.

AGCO CORP. AND PRECISION PLANTING, INC.,
*Defendants-Appellees*.

Appeal from the United States District Court for the District of Delaware, Judge Colm F. Connolly, Nos. 1:18-CV-827, 1:18-CV-828

## APPELLANT'S REPLY BRIEF

John C. O'Quinn
Nathan S. Mammen
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

February 9, 2024

## TABLE OF CONTENTS


Introduction ..... 1

Argument ..... 4

I. A New Trial is Required on Infringement. ..... 4

A. The Non-Infringement Verdict is Against the Weight of the Evidence. ..... 4

1. The District Court Undisputedly Did Not Weigh the Evidence Under the New-Trial Standard. ..... 4

2. The Parties Disputed the Meaning of the Court's Construction, Not the Facts. ..... 6

3. The Verdict is Against the Weight of the Evidence Because AGCO-Precision's Products Remove Seeds by Capture. ..... 9

B. The District Court Erred by Excluding AGCO-Precision's '037 Patent. ..... 14

C. The District Court Erred and Invited Jury Confusion by Revising Claim Construction Mid-Trial. ..... 19

1. The District Court Erred by Removing the No-Disclaimer Clause from its Construction. ..... 19

2. The District Court's Mid-Trial Revisions to Claim Construction Invited Jury Confusion and Prevented Deere from Trying its Case Properly. ..... 24

3. Given Removal of the "No Disclaimer" Language, the District Court Should Have Further Defined "Seed Delivery System." ..... 26

II. Alternatively, Denial of JMOL of Infringement Should be Reversed. ..... 28

A. JMOL is Preserved. ..... 28

B. No Reasonable Jury Could Find Non-Infringement. ..... 30

III. AGCO-Precision's Alternative Argument Concerning the Construction of "Endless Member" Lacks Merit. ..... 32

Conclusion ..... 38

# TABLE OF AUTHORITIES

## Cases

*AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997), *amended*, 131 F.3d 1009 .......... 30

*Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365 (Fed. Cir. 2012) .......... 8

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.,* 808 F.3d 1313 (Fed. Cir. 2015) .......... 35

*Apple Inc. v. Wi-Lan Inc.*, 25 F.4th 960 (Fed. Cir. 2022) .......... 34, 35

*Ashby v. McKenna*, 331 F.3d 1148 (10th Cir. 2003) .......... 6

*Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964 (Fed. Cir. 2021) .......... 26

*C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372 (Fed. Cir. 2020) .......... 12

*Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361 (Fed. Cir. 2005) .......... 31

*Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343 (Fed. Cir. 2010) .......... 30

*Cordis Corp. v. Medtronic AVE, Inc*, 339 F.3d 1352 (Fed. Cir. 2003) .......... 37

*Deere & Co. v. Kinze Mfg., Inc.*, 2023 WL 9472015 (S.D. Iowa Mar. 24, 2023) .......... 22, 32, 34, 36

*Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428 (10th Cir. 1990) .......... 16

*Electro Sci. Indus. v. Dynamic Details, Inc.*, 307 F.3d 1343 (Fed. Cir. 2002) .......... 32

*Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009) .......... 8

*Forest Labs., Inc. v. Abbott Labs.*,
239 F.3d 1305 (Fed. Cir. 2001) .......... 17, 18

*Function Media LLC v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......... 5, 27

*Glass v. Phila. Elec. Co.*, 34 F.3d 188 (3d Cir. 1994) .......... 16

*Google LLC v. Ecofactor, Inc.*,
__ F.4th __, 2024 WL 463231 (Fed. Cir. Feb. 7, 2024) .......... 21

*Honeywell Int'l, Inc. v. ITT Indus.*,
452 F.3d 1312 (Fed. Cir. 2006) .......... 35

*In re Nintendo Co.*, 544 F. App'x 934 (Fed. Cir. 2013) .......... 6

*In re Papst Licensing Litig.*, 778 F.3d 1255 (Fed. Cir. 2015) .......... 8

*Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209 (3d Cir. 2021) .......... 28

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) .......... 26

*Leader Techs., Inc. v. Facebook, Inc.*,
678 F.3d 1300 (Fed. Cir. 2012) .......... 4, 17

*Lesende v. Borrero,* 752 F.3d 324 (3d Cir. 2014) .......... 28

*Lind v. Schenley Indus.*, 278 F.2d 79 (3d Cir. 1960) (en banc) .......... 5

*Manion v. Am. Airlines, Inc.*, 395 F.3d 428 (D.C. Cir. 2004) .......... 6

*Marra v. Phila. Hous. Auth.*, 497 F.3d 286 (3d Cir. 2007) .......... 4

*Medisim Ltd. v. BestMed, LLC,*
758 F.3d 1352 (Fed. Cir. 2014) .......... 30

*Moba, B.V. v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003) .......... 31

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .......... 25, 26

*Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34 (3d Cir. 1989) ......... 16, 19

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......... 34, 37

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965 (Fed. Cir. 2018) ......... 8

*Realtime Data, LLC v. Iancu*, 912 F.3d 1368 (Fed. Cir. 2019) ......... 22

*Saffran v. Johnson & Johnson*, 712 F.3d 549 (Fed. Cir. 2013) ......... 35

*Scott v. Harris*, 550 U.S. 372 (2007) ......... 11

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
820 F.3d 419 (Fed. Cir. 2016) ......... 31

*Sound View Innovations, LLC v. Hulu, LLC*,
33 F.4th 1326 (Fed. Cir. 2022) ......... 9

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ......... 34, 35

*Tidewater Oil Co. v. Waller*, 302 F.2d 638 (10th Cir. 1962) ......... 5

*TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356 (Fed. Cir. 2017) ......... 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ......... 6

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ......... 22

*VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332 (Fed. Cir. 2023) ......... 26

*Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455 (Fed. Cir. 2016) ......... 5

*Williams v. Union Carbide Corp.*,
790 F.2d 552 (6th Cir. 1986) ......... 16

*Wisc. Alumni Research Found. v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018) ......... 31

**Other Authorities**

Fed. R. Civ. P. 50 .......... 3, 28

Fed. R. Civ. P. 59 .......... 4

Fed. R. Evid. 403 .......... 16

9B WRIGHT & MILLER, FED. PRAC. & PROC. §2533 (3d ed.) .......... 28, 30

11 WRIGHT & MILLER, FED. PRAC. & PROC. §2806 (3d ed.) .......... 4

Br. of Appellant,
*TVIIM, LLC v. McAfee, Inc.*, Fed. Cir. No. 16-1562,
2016 WL 1444662 (Apr. 8, 2016) .......... 5

Joint Chart of Proposed Constructions,
*Deere & Co. v. Kinze Mfg., Inc.*,
S.D. Iowa No. 4:20-cv-389, Dkt.161-1 (Jan. 31, 2022) .......... 22

*Note: quoted emphasis is added unless otherwise indicated.*

## INTRODUCTION

The Court need not reach all errors below to vacate or reverse. Failure to consider whether the verdict was against the weight of the evidence, excluding AGCO-Precision's '037 patent, and revising claim construction mid-trial are each independently sufficient. AGCO-Precision's response confirms there was *no factual dispute* about the accused products. As AGCO-Precision emphasizes, both sides' witnesses testified consistently about the products' operation. RedBr.26-28. SpeedTube works like a baseball pitching machine, where the wheels engage an object before projecting it. In other words, SpeedTube captures seeds from the meter, before propelling them to the flighted belt. That is factually undisputed, and constitutes infringement.

AGCO-Precision's response confirms its "non-infringement" arguments are legally unsound. Where claims require "capture," it is no defense to infringement that capturing happens in milliseconds, *e.g.*, RedBr.28, nor that capturing *precedes* "projecting and accelerating"—a mantra AGCO-Precision repeats some 25 times. RedBr.2, 3, 5, 20, 22, 25, 26, 27, 28, 29, 30, 33, 38, 39, 47, 51, 53, 57, 67. It is no answer that seeds may bounce within the system like a pebble in a closed jar—any bouncing

*follows* capturing and does not negate it. Nor is it relevant that AGCO-Precision's witnesses denied the infringement *conclusion*, or resisted using the word "capture" to describe accused products. *E.g.*, RedBr.28. Infringement necessarily follows from comparing the accused products' undisputed operation to the construed claims.

AGCO-Precision's defenses of its trial tactics and the district court's mid-trial rulings are equally unsound. Claim construction was resolved before trial in a way that necessarily rejected AGCO-Precision's "non-infringement" position. As construed, the "'seed delivery system'… *removes* the seed from the seed meter *by capturing* the seed *and then* delivers it to a discharge position," with "*[n]o disclaimer* of … drop by gravity between the seed meter and discharge." Appx123. "Capturing" has no required duration. The "capturing the seed and then deliver[ing] it" language *and* the no-disclaimer clause together make doubly clear that infringement occurs even if seeds later "bounce" or "project" within the system *after* removal.

That is why AGCO-Precision's trial strategy depended on fighting the *Markman* order. AGCO-Precision sought reconsideration (BlueBr.22-23; Appx3235), objected (with eventual success) to Deere quoting the full construction during trial (BlueBr.26-27), and kept the full construction out

of jury instructions. (BlueBr.33-35). The district court's gradual surrender to AGCO-Precision's tactics made claim construction a moving target at trial, helped AGCO-Precision smuggle its no-gravity-drop position back into the case, and prevented Deere from responding meaningfully to AGCO-Precision's arguments. By moving the goalposts and leaving the jury to define "capture," the court denied Deere a fair trial. AGCO-Precision responds mainly with waiver arguments. Deere waived nothing—it objected to AGCO-Precision's attempts to alter the claim construction. Deere is entitled to at least a new trial with a fixed claim construction.

AGCO-Precision's JMOL arguments repeat the district court's errors, repeat the "project and accelerate" mantra it presented to the jury, and insist that a formal Rule 50(a) motion is always required. Precedent is to the contrary.

Finally, perhaps because the judgment cannot be defended on its terms, AGCO-Precision raises an alternative argument disputing the construction of "endless member." That is, at most, an argument for remand, not affirmance. But AGCO-Precision's alternative argument is meritless for the reasons two district courts have already explained. The Court should remand for a new trial or reverse the non-infringement judgment.

# ARGUMENT

## I. A New Trial is Required on Infringement.

### A. The Non-Infringement Verdict is Against the Weight of the Evidence.

#### 1. The District Court Undisputedly Did Not Weigh the Evidence Under the New-Trial Standard.

AGCO-Precision does not dispute that the district court never weighed the evidence under Rule 59's new-trial standard, and thus never addressed Deere's argument that the verdict was against the weight of the evidence. BlueBr.45. AGCO-Precision contends only that the omission does not matter because applying the new-trial standard "duplicat[es]" the JMOL analysis. RedBr.42.

AGCO-Precision is wrong. Decades of precedent distinguish the two standards. *See* 11 WRIGHT & MILLER, FED. PRAC. & PROC. §2806 (3d ed.). The new-trial, weight-of-the-evidence standard is different, and less stringent (for the movant). The court "does not view the evidence in the light most favorable to the verdict winner, but instead exercises its own judgment in assessing the evidence." *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 309 n. 18 (3d Cir. 2007)); *see* 11 WRIGHT & MILLER §2806 n.10. The standard "involves an element of discretion which *goes further* than

the mere sufficiency of the evidence." 11 WRIGHT & MILLER §2806 (quoting *Tidewater Oil Co. v. Waller*, 302 F.2d 638, 643 (10th Cir. 1962)). Third Circuit precedent instructs that the court's independent judgment is important in technical cases like patent "infringement action[s]." *Lind v. Schenley Indus.*, 278 F.2d 79, 91 (3d Cir. 1960) (en banc).

AGCO-Precision observes that this Court's opinions sometimes address new-trial and JMOL arguments together. RedBr.42 (citing *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455 (Fed. Cir. 2016); *TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356 (Fed. Cir. 2017); *Function Media LLC v. Google, Inc.*, 708 F.3d 1310 (Fed. Cir. 2013)). That is non-responsive. Denying a new trial under the less-stringent weight-of-the-evidence standard may suffice to deny JMOL, but the converse is not true. None of the cited cases address this issue at all, nor suggest that it is only harmless error to skip over a challenge to the evidence under the new-trial standard.[1]

[1] *Wi-LAN* stated both standards explicitly throughout. *E.g.*, 811 F.3d at 464. *TVIIM* considered a claim-construction argument that did not implicate the difference between the JMOL and new-trial standards. *See* 2016 WL 1444662, at *1 (Appellant's brief: "This appeal differs from most… TVIIM contends no single construction … can support the jury's finding of both non-infringement and invalidity."). AGCO-Precision misreads *Function Media*—the cited discussion concerned only new-trial arguments. *See* 708 F.3d at 1330-31 ("V. Motion for New Trial").

Nor did Deere's post-trial briefing conflate standards. RedBr.43 n.8. Deere's motion separately applied the new-trial standard in arguing the verdict was against the weight of the evidence. Appx4317; Appx4321. The district court addressed the evidence only under the JMOL standard, and only addressed whether trial errors—not the weight-of-the-evidence—warranted a new trial. Appx39-43.

That omission is no technicality. Where a district court fails to exercise discretion, its ruling is not reviewed with deference. *In re Nintendo Co.*, 544 F. App'x 934, 940 (Fed. Cir. 2013); *cf. Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011). The court of appeals can only affirm if it "can say as a matter of law that it would have been an abuse of discretion for the trial court to rule otherwise." *Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003); *see also Manion v. Am. Airlines, Inc.*, 395 F.3d 428, 431 (D.C. Cir. 2004). That standard cannot be met here.

### 2. The Parties Disputed the Meaning of the Court's Construction, Not the Facts.

The district court acknowledged repeatedly that the jury was "going to grapple with" the meaning of "capture" in its construction. BlueBr.46-47. AGCO-Precision contends the court actually meant "the factual ques-

tion of whether SpeedTube's feeder wheels remove seed by capture." RedBr.45. But the full paragraph is the following:

> The jury is *going to grapple with, when those two loading wheels hit that seed, are they capturing it*. And, you know, I almost feel like I should instruct—instruct them that capture in that belt, going down to the bottom, is irrelevant. I think it's—the issue is whether it's captured by the loading wheel or the wheels. And it happens in a three-thousandths of a second. And they're going to—that's what they're going to go back and try to figure out."

Appx40538(538:15-23). There is no factual dispute about the accused products' operation—*i.e.*, what happens "when those two loading wheels hit that seed." *See* BlueBr.15-19; *infra* §I.A.3. The court's stated concerns whether to instruct the jury that later actions are "irrelevant," or whether something that "happens in a three-thousandths of a second" is "capture" are tell-tale signs of a dispute over the construction's meaning.

The court's later statements confirm as much. The court refused "to add further clarification" about "capture" because it "d[id]n't know how the jury is going to look at it. They may say … it happened so fast through the two loading wheels and … that is the capture." Appx40545(545:8-15). The court also anticipated the jury might ask questions about claim construction. Appx41140(1140:17-1141:1); Appx41142(1142:8-13).

AGCO-Precision is wrong to contend Deere waived by "never [seeking] a construction of that term." RedBr.44. "Capture" is not a claim "term"; it is part of the *construction*—which *AGCO-Precision* proposed and the district court adopted. Deere preserved its arguments by proposing its own construction, *see In re Papst Licensing Litig.*, 778 F.3d 1255, 1266 (Fed. Cir. 2015), and by opposing AGCO-Precision's later attempts to revise the *Markman* order.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 974 (Fed. Cir. 2018) is inapposite. *See* RedBr.44. There, the appellant challenged part of the district court's construction *for the first time on appeal*. 904 F.3d at 973-74. Here, the meaning of "capture" was hotly disputed throughout pretrial and trial, and Deere consistently opposed AGCO-Precision's attempts to change the construction. *E.g.,* Appx41034-41035(1034:22-1035:5); Appx41140-41141(1140:17-1141:1); Appx41142(8-13). The "court's obligation to ensure that questions of the scope of the patent claims are not left to the jury" includes resolving such disagreements. *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1382-83 (Fed. Cir. 2009); *see Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012).

Given the dispute over the meaning of "capture," the construction of "seed delivery system" given to the jury was "inadequate for the second step of an infringement analysis—comparison to the accused products or methods." *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1336 (Fed. Cir. 2022).

### 3. The Verdict is Against the Weight of the Evidence Because AGCO-Precision's Products Remove Seeds by Capture.

A new trial is warranted because the verdict is against the great weight of the evidence. As explained (BlueBr.48), AGCO-Precision's "evidence" of non-infringement concerned only **(1)** the *duration* of capture within its system, and **(2)** what happens *after capture* by the wheels. AGCO-Precision's brief on appeal *confirms* this: AGCO-Precision defends the judgment with "evidence that the seed *only very briefly* contacted the feeder wheels to accelerate the seed, *and then* travelled through the air without touching the feeder wheels or any other component." RedBr.47. And it repeats the mantra that the feeder wheels "project and accelerate" seed—which AGCO-Precision contends means they do not "capture."

This is all legally irrelevant. "Capture" has no temporal requirement. Brief infringement is infringement. *See* BlueBr.49-50. Indeed, millisec-

onds-long capture is not even "brief" for an invention designed to increase planting speed in devices that already plant a seed approximately every 33 milliseconds. *See* Appx40384(8-25); BlueBr.50-51. That seeds may "travel[] through the air" *after* capture by the feeder wheels is likewise irrelevant. *Compare* Appx125 (district court's construction: "'seed delivery system'… *removes* the seed from the seed meter *by capturing* the seed *and then* delivers it to a discharge position," including "*no disclaimer* of … drop by gravity between the seed meter and discharge"), *with* RedBr.47 (AGCO-Precision alleging non-infringement because the "seed *only very briefly* contacted the feeder wheels to accelerate the seed, *and then* travelled through the air without touching the feeder wheels…").

If more is needed, *AGCO-Precision's own trial analogy* to a baseball pitching machine confirms infringement. *See* Appx52020 (AGCO-Precision's closing argument slide, below)); BlueBr.48; Appx40177(177:11-17); Appx40516(5-12); Appx41228(1128:19-23).




As Deere's expert explained without contradiction, a pitching machine's wheels must grab the baseball before projecting it toward the batter, *i.e.*, "capturing and releasing" the ball. Appx40516(516:5-12). The machine cannot work unless the wheels capture the ball before pitching it. AGCO-Precision's brief is tellingly silent on this point.

Undisputed video evidence of AGCO-Precision's product, Appx50066; Appx50120, further refutes AGCO-Precision's assertions that the "feeder wheels *never* capture seed (not even briefly)," RedBr.46, or "physically strike the seed to project it off the seed meter." RedBr.48. The videos show that, as the meter disk rotates, the seed is held *between* the feeder wheels and propelled to the flighted belt. *See Scott v. Harris*, 550 U.S. 372, 379-81 (2007) (no reasonable jury could believe testimony that video evidence refuted).

AGCO-Precision's documents, witnesses, and discovery responses likewise confirm the SpeedTube feeder wheels capture seed before propelling it. In AGCO-Precision's words:

- "SpeedTube *controls* the seed *all the way* from the meter disk to the furrow." Appx50053.
- "Feeder wheels at the top *grab* the seed from the disk, placing it onto the belt, and safely delivering it to the bottom of the trench." Appx50061; *see* Appx40838-40839(838:12-839:23); Appx50055 (AGCO-Precision press release); Appx50232 (quoting *id.*).
- "[F]eeder wheels … *pluck* the seed off the disk while it's still being held under vacuum, and then they place the seed right into the belt itself." Appx40413-40415(413:19-415:2); *see also* Appx50003 (AGCO-Precision video at 4:13-4:33); Appx40416-40417 (same).
- The feeder wheels "*take* the seeds while held on the seed meter disk and accelerate[] them towards the flights of the flighted belt." Appx3749; Appx40418-40419(418:14-419:4); *see also* Appx50230.

AGCO-Precision dismisses these as "high-level, non-technical marketing statements," RedBr.46, but they include descriptions from SpeedTube's lead engineer, and AGCO-Precision's discovery responses in this case. "Marketing" or otherwise, AGCO-Precision cannot dispute those materials fairly describe its products. AGCO-Precision's "statements regarding the capabilities of its own product constituted substantial evidence of those capabilities." *C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1379 (Fed. Cir. 2020). The evidence all points in one direction and

confirms feeder wheels "capture" the seed when removing it from the meter. The jury's contrary verdict is against the weight of the evidence.

Separately, the verdict is against the weight of the evidence *even if* one credits AGCO-Precision's argument that the feeder wheels do not "capture" the seed (because they capture "briefly" before "projecting and accelerating"). The seed's subsequent "travel[] through the air," RedBr.47, is undisputedly *within* the "system's" confines. The seed remains "captured" by the "system"—just as a seed in a closed jar is captured, even though shaking the jar may make the seed "travel through the air" *within* the jar.

The claim construction recites a "*system* … that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position." Appx125. The "system" includes the feeder wheels (the claimed "loading wheels") and the flighted belt that delivers seed to the ground ("endless member"). The whole *system*—not just the wheels—captures seed, and evidence confirmed as much. *See* BlueBr.27-29, 53-54.

AGCO-Precision does not appear to dispute that once the feeder wheels remove seed from the meter, the seed *is* captured *in the system*. AGCO-Precision argues that *only* the feeder wheels matter because they are the "component" that removes the seed. RedBr.48-49. In other words,

capture must be done by one component. That is nowhere in the claims or the construction, and makes no sense. AGCO-Precision's approach is like deciding whether someone has captured a dog solely by leading him through a gate—regardless of what is on the other side. The dog is captured if the gate leads to a fenced yard, but not if the gate leads to an open field. Here, undisputed evidence shows that once the feeder wheels remove the seed, the seed is (in AGCO-Precision's words) "projected and accelerated" *inside the system*, which it cannot leave until it is delivered under control to the ground. Whether one focuses on the feeder wheels alone or the whole system—and even indulging AGCO-Precision's arguments about "brief" capture by the wheels—the verdict remains against the weight of the evidence.

### B. The District Court Erred by Excluding AGCO-Precision's '037 Patent.

Excluding AGCO-Precision's '037 patent from trial further prevented Deere from responding to AGCO-Precision's "non-infringement" arguments. "The only infringement dispute at trial," was whether SpeedTube's feeder wheels "remove[] seed … by capture." Appx49-50. Part of AGCO-Precision's strategy was to fight nomenclature and resist using the word "capture" to describe what its products undisputedly do.

To respond to AGCO-Precision's attempts to mislead the jury, Deere presented evidence including AGCO-Precision's own, pre-litigation descriptions of SpeedTube's feeder wheels as "grabbing," "plucking," and "taking" seed from the meter disk—all different ways of saying "capture." To counter its own documents, AGCO-Precision had its lead SpeedTube engineer, Radtke, testify that the feeder wheels "do the opposite of" capture *because* the "seeds are projected through and accelerated by the wheels." Appx40874-40875(874:3-875:18). With no pre-litigation documents describing SpeedTube that way, Radtke's testimony was critical for AGCO-Precision.

Fairness dictates that Deere should have been permitted to cross-examine Radtke with his own '037 patent. AGCO-Precision had already introduced, during Radtke's direct testimony, "*other patents* relating to [his] work in developing SpeedTube." Appx40871-872(871:16-872:10). AGCO-Precision identified the '037 patent in discovery as "showing the novel idea for the feeder wheels." Appx3750. That patent showed—contrary to Radtke's testimony—that "capture" and "project and accelerate" were *not* mutually exclusive because they occurred in sequence. *E.g.*, Appx3808(12:40-48) ("At step 1525, the seed is preferably *captured between the loading*

*wheels* … At step 1530, the seed is preferably *ejected* from between the loading wheels… ejected downward into the belt…”). But the district court blocked Deere’s questioning under Rule 403. Appx40902(902:2-13). Courts of appeals have found reversible error in the exclusion of similar evidence of prior inconsistent statements. *E.g.*, *Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 40-42 (3d Cir. 1989); *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1434-35 (10th Cir. 1990); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555-56 (6th Cir. 1986).

AGCO-Precision defends the ruling as based on “significant risk of jury confusion and undue prejudice to [AGCO-]Precision.” RedBr.50. The district court neither gave those reasons, nor did any explicit balancing under Rule 403. Appx40902(902:2-13); *see Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191-92 (3d Cir. 1994). The court referred only to avoiding “a mini trial” because the ’037 patent was “not asserted in this case,” and because AGCO-Precision disputed whether it “covers the accused products and uses language that it would be fair to conclude addresses the exact same issues in and language used in the asserted patents.” Appx40902(902:2-13).

Neither reason makes sense. AGCO-Precision *already* elicited testimony about *other* AGCO-Precision patents that were likewise not asserted

here. Appx40871-40872(871:16-872:10). The ’037 patent is merely another AGCO-Precision patent, and presents no more risk of confusing the jury.

AGCO-Precision’s dispute about the ’037 patent’s “language” contradicts its own interrogatory response, which said the ’037 patent “show[ed] the novel idea for” SpeedTube’s feeder wheels. AGCO-Precision “did not qualify its interrogatory response in [the] manner” it argues on appeal. *Leader*, 678 F.3d at 1306 (rejecting attempt on appeal to explain away admissions in interrogatory responses). AGCO-Precision’s interrogatory response (stating SpeedTube’s feeder wheels “*take* seeds while held on the seed meter disc and accelerates them toward the flights of the flighted belt,” Appx3749) matches the ’037 patent’s description of feeder wheels that “capture” seeds from the meter, then “eject” them “into [the] belt.” Appx3808(12:40-48). This is not a case where the accused infringer’s patent “may *or may not* describe the product.” *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001).

Regardless, the need for the ’037 patent arose in the first place because of AGCO-Precision’s choice to present testimony that “projecting and accelerating seed” is “the opposite” of “capturing.” Appx40874-40875(874:3-875:18). AGCO-Precision put nomenclature at issue. Deere was entitled to

respond. *See Forest*, 239 F.3d at 1312. Importantly, Radtke's '037 patent refutes his testimony—*regardless* of whether its claims cover SpeedTube. If AGCO-Precision believes the '037 patent's language should be weighed lightly, that is an argument for the jury—not a reason to exclude evidence and excuse AGCO-Precision from explaining the contradiction between Radtke's testimony and Radtke's patent.

AGCO-Precision's further attempts to distinguish SpeedTube from the '037 patent are unavailing and not the basis for the district court's ruling. RedBr.51. AGCO-Precision argues the '037 patent uses "solid wheels to remove seeds" while "SpeedTube … uses feeder wheels with paddles." RedBr.51. The '037 patent, however, states "vanes in each loading wheel" make the wheel "*more* compressible" than "*solid*" material, so that wheels "slightly compress[]" when a seed is between them—just like SpeedTube. *Compare* Appx3807(9:27-30, 10:30-33), *with* Appx40866(866:18-25).

AGCO-Precision argues that SpeedTube's feeder wheels "strik[e] the seed to project and accelerate it towards the flighted belt." RedBr.51. But the '037 patent similarly explains that after capturing seeds, the loading wheels "eject[]" them towards the belt with a "velocity imparted on the seeds." Appx3807(10:38-48).

Finally, AGCO-Precision's argument that excluding the '037 patent did not affect the result, RedBr.53, ignores the reality of the trial. Radtke's testimony that "projecting and accelerating" negates "capture" is central to AGCO-Precision's case, and is the same mantra repeated throughout AGCO-Precision's appeal brief. Radtke's testimony was important and uncorroborated. AGCO-Precision had no technical documents describing SpeedTube's feeder wheels as "projecting and accelerating." Radtke's own '037 patent directly refuted Radtke's testimony by stating explicitly that "captur[ing]" and "eject[ing] from between the loading wheels" Appx3808(12:40-48) were not mutually exclusive because they occurred in sequence. Questioning Radtke about his '037 patent "would be potentially devastating cross-examination" and "the jury may very well have discredited [Radtke] and rejected his testimony." *Petree*, 887 F.2d at 42. The error was not harmless.

### C. The District Court Erred and Invited Jury Confusion by Revising Claim Construction Mid-Trial.

#### 1. The District Court Erred by Removing the No-Disclaimer Clause from its Construction.

The district court erred by excising the no-disclaimer clause from its construction, and leaving the parties to fill the void with arguments. AGCO-Precision's responses are unsound.

*First*, AGCO-Precision's waiver argument is wrong. RedBr.53. Deere never said "we're fine with" keeping the no-disclaimer clause from the jury. Every time the no-disclaimer clause arose, Deere argued that the jury should see it. *E.g.*, Appx40027-40029; Appx4251. The district court initially agreed, rejecting AGCO-Precision's objections to opening statements, Appx40031(31:2-5), and to a witness's examination. Appx40390-40392(390:22-392:1). Later, the court changed its mind, ruling "on cross *and going forward*, I'm *not* going to allow Deere to put in front of the jury *again* that I have construed the claim to say no disclaimer." Appx41030(130:10-13).

Deere sought to ensure AGCO-Precision would not take advantage of that turnabout by criticizing Deere's *prior* use of the no-disclaimer clause, *e.g.*, in opening statements. Appx41031(1031:11-14). When Deere's counsel later said "we're fine with *that*," Appx41032(1032:7), "*that*" was responding to and referring to the court's explanation that Deere would not "be punished for [the no-disclaimer clause] being in your opening," nor barred from using the word "disclaimer." Appx41031-41032(1031:25-1032:4). AGCO-Precision's spin on that exchange is inaccurate.

Nor did Deere fail to object to jury instructions. RedBr.53-54. Deere proposed instructions *including* the no-disclaimer clause. BlueBr.33; Appx4251-4252. And in the very pages AGCO-Precision cites, RedBr.53, *AGCO-Precision* stated the "first dispute … is whether or not to put the no disclaimer language in the claim construction"—to which the court responded "*I've already ruled on that*." Appx41140(1140:13-18).

*Second*, the no-disclaimer clause *was* part of the construction. The district court's contrary views, RedBr.54, are "not dispositive." *Google LLC v. Ecofactor, Inc.*, __ F.4th __, 2024 WL 463231, at *4-5 (Fed. Cir. Feb. 7, 2024) (rejecting PTAB characterization of its opinion as not having construed claim terms). Nor does the *Markman* order's typeface support AGCO-Precision. RedBr.54. The bolded and plain-text portions of the construction are both directly under the heading "Court's Construction," Appx125. The parties agreed on the order's text and format, submitted it jointly to the court after the *Markman* hearing, and the court signed without change. BlueBr.20-21. The court correctly stated earlier "it's a fair reading given the way the order is structured to say that the note '*no disclaimer' is part of the construction*." Appx40391(391:4-6).

Nor do other proceedings suggest the no-disclaimer clause was not part of the construction. RedBr.55. It is irrelevant that Deere did not argue the "no disclaimer" language in AGCO-Precision's IPRs, or the *Kinze* district-court litigation. Tribunals "construe 'only those terms … that are in controversy, and only to the extent necessary to resolve the controversy.'" *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)). There was no argument in *Kinze* or the PTAB that Deere disclaimed gravity drop in the claimed "seed delivery system." *E.g.*, Joint Chart of Proposed Constructions, *Deere & Co. v. Kinze Mfg., Inc.*, S.D. Iowa No. 4:20-cv-389, Dkt.161-1 at 11-12 (Jan. 31, 2022).

In *Kinze*, defendants focused on different terms to argue that the claims excluded gaps between the seed meter and endless member. The *Kinze* court rejected those arguments. *See Deere & Co. v. Kinze Mfg., Inc.*, 2023 WL 9472015 at *26 (S.D. Iowa Mar. 24, 2023). The *Kinze* construction is consistent with the original construction here, and makes equally clear that the claims do not exclude gravity drop.

AGCO-Precision asserts it "never" argued "that the patents disclaimed a gravity drop." RedBr.56-57. That cannot be squared with the

trial record or even AGCO-Precision's appeal brief. AGCO-Precision did not use the words "disclaimed a gravity drop." But it argued the same thing in substance throughout trial—including that "flying through the air" was inconsistent with capture. *E.g.*, Appx40998(998:14-18) (seed is "just floating free"). Deere's opening brief explained this, repeatedly. *E.g.*, BlueBr.25-27, 31-33, 35, 63-64. AGCO-Precision's reliance on this same approach on appeal belies its no-harm-no-foul argument. *E.g.*, RedBr.48 (seed "remains not captured as they travel through the air" (emphasis omitted)).

*Third*, Deere's ability to make arguments does not render the district court's error "harmless." RedBr.58. As explained, BlueBr.63, attorney argument is no substitute for a court order.

*Finally*, AGCO-Precision is wrong to deny that the parties disputed claim scope at trial. RedBr.58-59. Again, AGCO-Precision's products' operation was factually undisputed. The trial was entirely about AGCO-Precision denying its products "removed seeds by capture"—because the removal by capture happened quickly, and because "projecting and accelerating" happened *immediately afterward*. Both arguments are irrelevant, and the latter was AGCO-Precision's "gravity drop" argument repackaged.

AGCO-Precision has no response to the court's comments *anticipating* the jury would be confused, but refusing to give the full construction unless the jury happened to ask the right questions. BlueBr.61-62. AGCO-Precision says the *Markman* order "*already* resolved" the parties' dispute, RedBr.58, but that is not how the jury was instructed. The "no disclaimer" construction contravened AGCO-Precision's non-infringement position. Withholding that language injected ambiguity into the trial and allowed AGCO-Precision to confuse the jury.

#### 2. The District Court's Mid-Trial Revisions to Claim Construction Invited Jury Confusion and Prevented Deere from Trying its Case Properly.

AGCO-Precision largely ignores Deere's showing that the mid-trial revisions to claim construction invited jury confusion and prevented a fair trial. *See* BlueBr.63-67. Before trial, the *Markman* order made explicit that "gravity drop" in the system did not mean non-infringement. During trial, the district court barred Deere's cross-examination using the no-disclaimer clause, cut the clause from jury instructions, and acknowledged the jury would "grapple" with what "capture" meant. Appx40538(538:15-16). But it declined "to add further clarification," Appx40545(545:8-15), un-

less the jury asked certain questions. Appx40134-40135(1034:24-1035:5); Appx41140-41142(1140:17-1141:1, 1142:8-13).

AGCO-Precision tries to dodge all of this and reframe the issue as whether the court "need[ed] to construe 'capture'"—which AGCO-Precision contends is waived. RedBr.59-60. Waiver is addressed above, *supra* pp. 9-10. Regardless, the mid-trial *change* was prejudicial precisely because it opened the door for AGCO-Precision to argue that "free" motion was inconsistent with "capture."

AGCO-Precision insists whether "SpeedTube met the plain meaning of 'capture' … presented a *fact question* for the jury," RedBr.60-61, but never explains **(1)** why "plain meaning of 'capture'" is a "fact question," or **(2)** even if so, how that would excuse the court's errors. AGCO-Precision does not deny that witnesses all agreed about *how SpeedTube* operated. §I.A.2, *supra*. Given the parties' arguments and the court's prior rulings, the decision to leave the jury with only the "plain meaning of capture," without the no-disclaimer clause, shirked the court's "duty to resolve" "fundamental disputes regarding the scope of a claim term." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *id.* at 1360 ("[T]he court, *not the jury*, must resolve that dispute."). It was

not "harmless," RedBr.58, to withhold the no-disclaimer clause and not engage in further construction.

Finally, AGCO-Precision's citations are inapposite, even as AGCO-Precision describes them. RedBr.61-62. Unlike in *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010), the meaning of "capture" *is* a question about the "scope of the [claim] limitation," not a "factual question[]" about infringement. §I.A.2, *supra*. In *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977-78 (Fed. Cir. 2021), the district court's earlier orders *did* "resolve[] the parties' controversies as to the meaning of" the disputed term. Here, the opposite is true. *VLSI Tech. LLC. v. Intel Corp.*, 87 F.4th 1332, 1341 (Fed. Cir. 2023) concerned this Court's review "[w]hen a claim phrase is not construed" at all—a wholly different issue. Those cases do not limit or overrule *O2 Micro*, or otherwise hold that courts may always leave juries to "apply the plain meaning" of a claim term (or here, of a term in a construction). RedBr.61.

**3. Given Removal of the "No Disclaimer" Language, the District Court Should Have Further Defined "Seed Delivery System."**

After it removed the no-disclaimer clause from its construction, the court should have clarified that infringement occurs when the *system* cap-

tures seeds. BlueBr.67-70. That might have mitigated the prejudice of withholding the no-disclaimer clause from the jury. *Id.*

AGCO-Precision responds primarily with waiver arguments, RedBr.62-64, in which it simply denies Deere's showing that the argument is not waived. *See* BlueBr.70-72. The court understood that the parties' arguments assumed two different meanings of "capture." *E.g.*, Appx40538(538:19-20); Appx40545(545:16-18). And it heard both sides' arguments at the time, including Deere's position that "it's the system not the wheel" Appx40541(541:12-13). No more was needed to preserve the argument. *Function Media*, 708 F.3d at 1325; BlueBr.70-72.

AGCO-Precision's argument that the express construction was clear enough, RedBr.64, is irreconcilable with AGCO-Precision's arguments at trial and elsewhere in its appeal brief. RedBr.48-49. AGCO-Precision is correct that the construction "already unambiguously provided that the 'system' is what must perform the removal-by-capture." RedBr.64. But with the district court's acquiescence, AGCO-Precision nonetheless argued to the jury that the seed it not "captured" if it moves *within the system* after contact with the feeder wheels. If anything, AGCO-Precision's brief confirms the prejudice to Deere, and the need for a new trial.

## II. Alternatively, Denial of JMOL of Infringement Should be Reversed.

### A. JMOL is Preserved.

The purpose of a Rule 50(a) JMOL motion is "to apprise the trial court of the moving party's position to see if any defects can be corrected before the jury retires." 9B WRIGHT & MILLER § 2533. "[I]t is not essential that there be a formal motion under Rule 50 at all." *Id.* AGCO-Precision does not contend that it or the court was not "apprised" of Deere's position, or that the absence of a formal Rule 50(a) motion otherwise surprised AGCO-Precision or denied it the opportunity to correct defects in its case before the jury retired. Instead, AGCO-Precision simply insists that the lack of a formal Rule 50(a) motion automatically means Deere waived JMOL. RedBr.64-65.

AGCO-Precision's citations do not support its arguments. In *Lesende v. Borrero*, the appellant failed to preserve its evidence-sufficiency challenge on appeal because it failed to challenge sufficiency of the evidence *at all*, in *any* post-trial motion. 752 F.3d 324, 333 (3d Cir. 2014). Where the appellant's post-trial motions challenged evidence-sufficiency *only for damages*, it could not challenge evidence-sufficiency for *liability* for the first time on appeal. *Id.* at 330, 333. *Kars 4 Kids Inc. v. America Can!*, 8

F.4th 209, 220 (3d Cir. 2021) held only that pre-verdict arguments about trademark *ownership* failed to preserve post-verdict arguments about *invalidity*. There was no contention that the court was otherwise apprised of the appellant's invalidity position, and nothing like the record here, where the district court preempted any Rule 50(a) motion on infringement by stating "[d]irect infringement is going to the jury." Appx41108(108:15-19).

AGCO-Precision contends that the court's "going to the jury" statement is irrelevant because it referred to AGCO-Precision's JMOL motion. RedBr.65-66. But **(1)** infringement is subject to the preponderance standard, and **(2)** Deere's and AGCO-Precision's JMOL positions addressed the same narrow issue. AGCO-Precision's argument might have merit if either of those were different. But here, infringement turned entirely on whether the accused products "remove … by capture." *See* Appx49-50 ("the only infringement dispute at trial"). Deere's JMOL position was that a reasonable jury could only find that the accused products *do* remove by capture, AGCO-Precisions JMOL position was that a reasonable jury could only find that they *don't*. The court's spontaneous statement "*direct infringement is going to the jury*" preempted both positions. Appx41108(1108:15-19).

This is thus unlike *Medisim Ltd. v. BestMed, LLC*, where the patent challenger *opposed* JMOL of *no* anticipation by arguing "anticipation was 'definitely something for the jury,'" while not affirmatively moving for JMOL of anticipation. 758 F.3d 1352, 1357 (Fed. Cir. 2014). Here, the *district court's statement* preempted JMOL on either side of the question whether the accused products "remove … by capture."

Finally, *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343 (Fed. Cir. 2010), which AGCO-Precision cites, RedBr.65, supports *Deere*. In finding waiver, *Comaper* emphasized "[t]his was *not* a situation in which the district court suggested that a formal JMOL motion at the close of the evidence was unnecessary." *Id.* at 1347. Here, the opposite is true. *Cf.* 9B WRIGHT & MILLER § 2533.

### B. No Reasonable Jury Could Find Non-Infringement.

Beyond waiver, AGCO-Precision has little to say. *See* RedBr.67.[2] AGCO-Precision repeats that the feeder wheels remove seed by "projecting and accelerating," but that happens *after* removal. The construction states

[2] AGCO-Precision cites evidence that Deere knew about SpeedTube before suing, and once tried to acquire Precision. RedBr.67. That has nothing to do with infringement, which is a "comparison of the claims with the accused device." *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997), *amended*, 131 F.3d 1009.

that *after* removal by capture, the system "*then* delivers [seed] to a discharge position." Appx125. The undisputed evidence, including video, shows that seed is removed from the meter when SpeedTube's feeder wheels contact seed between them. Appx40996(996:11-16); Appx40999-41000(999:11-1000:6); Appx50339. From there, the seed cannot move except where the wheels direct it. Whether seed is "project[ed] and accelerate[d]" to the flighted belt *after* being captured between the feeder wheels, Appx40874(874:3-6), is irrelevant. The seed was captured when removed.

Where, as here, no reasonable jury could find non-infringement under the court's construction, this Court has reversed denial of the patentee's JMOL motion. *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 425 (Fed. Cir. 2016); *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1372-73 (Fed. Cir. 2005); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1315-16 (Fed. Cir. 2003). Notwithstanding AGCO-Precision's arguments elsewhere about "plain meaning" of "capture," RedBr.61-62, this Court has likewise reversed where no reasonable "plain meaning" of a term can support the verdict. *See Wisc. Alumni Research Found. v. Apple Inc.*, 905 F.3d 1341, 1348 (Fed. Cir. 2018). The Court should reverse.

## III. AGCO-Precision's Alternative Argument Concerning the Construction of "Endless Member" Lacks Merit.

AGCO-Precision's alternative argument concerning the construction of "endless member," RedBr.68, is, at most, an argument for remand. There was no dispute at trial that AGCO-Precision's accused products practiced the "endless member" term as construed. Whether the same would be true under AGCO-Precision's construction—either literally or under the doctrine of equivalents—was simply not addressed. The most that could follow from AGCO-Precision's argument is remand, not affirmance. *Electro Sci. Indus. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1350 (Fed. Cir. 2002).

The argument is meritless, in any event. The respective constructions of "endless member" are below.

| Delaware and Iowa district courts[3] | AGCO-Precision (RedBr.75) |
|---|---|
| "a continuous conveyor forming a loop, such as a belt or a chain" | "a brush belt with bristles, or belt with other materials, that grip the seed" |

Both district courts correctly rejected AGCO-Precision's construction in favor of Deere's. *See* Appx38097-38100(97:14-100:10); Appx124; *Deere v. Kinze*, 2023 WL 9472015, at *13-19. Both recognized Deere's construction

[3] Appx124; 2023 WL 9472015, at *19

as consistent with the intrinsic evidence, and AGCO-Precision's construction as a classic attempt to read limitations from preferred embodiments into the claims.

To start, AGCO-Precision misstates the record when it contends the district court here "viewed the construction of '*endless member*' as a close call." RedBr.68. AGCO-Precision's transcript citations address a different term ("*delivery system*") in a *different patent family* not at issue here. Appx38214(214:1-9) (referencing "'502" patent family); Appx38116-38118(116:16-118:5); *see* Appx38111(111:22-25).

For the "endless member" term, the court never suggested the question was a "close call." Appx38097-38100(97:14-100:10). The court explained it was undisputed "that an endless member consists of at least Deere's proposed construction" and "[t]he issue [wa]s whether further limitation should be added as proposed by [AGCO-]Precision." Appx38098(98:3-6). The court found AGCO-Precision's arguments unpersuasive. Appx38098-38100 (98:7-100:10).

The Iowa district court, construing the '663 and '955 patents, likewise independently considered and rejected similar arguments to limit

"endless member" to a belt that "grips" seed. *Deere v. Kinze*, 2023 WL 9472015 at *13-19. Both courts were correct.

*First*, AGCO-Precision's arguments contravene the basic principle that limitations from embodiments should not be read into the claims. This Court has said, many times, that it is "not enough that *the only embodiments, or even all of the embodiments*, contain a particular limitation. We do not read limitations from the specification into the claims; we do not redefine words." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012); *see, e.g.*, *Apple Inc. v. Wi-Lan Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) ("Embodiments in the specification—*even if there is only one embodiment*—cannot limit the scope of the claims absent the patentee's words or expressions of manifest exclusion or restriction."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (this Court has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

AGCO-Precision is thus wrong to derive limitations from the specification's statements that "[t]he endless member of the delivery system has been described as being a brush belt with bristles" that "grip the seed," or

that "other material types can be used to grip the seed," RedBr.69 (emphasis omitted, citing Appx186(7:25-31)), or by pointing to the description of the brush belt's operation where seeds are captured in bristles. RedBr.69. None are statements of "manifest exclusion." *Apple*, 25 F.4th at 967. All explicitly concern only the preferred embodiment. Appx184(3:1-2); Appx186(7:28-35). The patents also state that the invention is not limited to the preferred embodiment's brush belt. Appx186(7:28-35). It is likewise immaterial that "*every* specification figure shows … the endless member as a brush belt with bristles that grip seed." RedBr.70 (original emphasis). *See Thorner*, 669 F.3d at 1366.

AGCO-Precision's citations are inapposite. RedBr.71. *Honeywell Int'l, Inc. v. ITT Industries* construed "fuel injunction system component" as "fuel filter" because the patent referred repeatedly "to the fuel filter as '*this invention' or 'the present invention.'*" 452 F.3d 1312, 1318 (Fed. Cir. 2006). *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, construed a device's "proximate end" consistent with "common use of the term 'end'" and the patent's consistent use *of that term* in the specification and figures. 808 F.3d 1313, 1317-18 (Fed. Cir. 2015). *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559-60 (Fed. Cir. 2013) considered "[e]xtensive, constit-

uent usage in the specification" along with disclaimers in prosecution. Nothing similar exists here. As the Iowa and Delaware district courts both observed, the patents neither define "endless member" as a brush belt, nor "not identify the brush belt as characteristic of the invention." *Deere v. Kinze*, 2023 WL 9472015 at *16; Appx183(2:23-38). AGCO-Precision is simply reading details of embodiments into the claims.

*Second*, AGCO-Precision is wrong to allege inconsistency between the court's construction and the patents' discussion of prior-art shortcomings. RedBr.72 (citing Appx183(1:50-2:3, 2:4-19)). The patents do not criticize prior-art systems for using non-gripping endless members like flighted belts—indeed, they recognized the *benefits* in helping to "control the seed path and reduce variability due to dynamic events." Appx183(2:6-12). Rather, the patents explained that prior-art systems offered incomplete solutions because they lacked controlled handoff from seed meter to the seed delivery system and controlled delivery to the soil. Appx183(2:11-19).

Prosecution history, moreover, confirms that both Deere and the examiner understood that endless members were not limited to brush belts or other seed-gripping materials. The examiner initially identified two *smooth* belts in the Sauder prior-art reference as the claimed endless

member in the ’663 patent’s application. Deere agreed that Sauder’s smooth belts, and Sauder’s flighted-belt embodiment (shown on page 9 of AGCO-Precision’s brief), *were* “endless members,”. Appx7947-7948; *see* Appx7971-7973. But, Deere argued, Sauder *lacked a loading wheel* to guide seed into the endless member. Appx7948. The examiner’s rejection and Deere’s response reflect a consistent understanding of “endless member” at odds with the limitations AGCO-Precision would read in. *See Phillips*, 415 F.3d at 1317 (“prosecution history provides evidence of how the PTO and the inventor understood the patent.”); *Cordis Corp. v. Medtronic AVE, Inc*, 339 F.3d 1352, 1359-60 (Fed. Cir. 2003).

*Finally*, it is not true that Deere “relied primarily on extrinsic evidence outside the seed planting field” for the construction of endless member. RedBr.71. Deere relied on the intrinsic evidence discussed above. Appx2437-2441; Appx2458-Appx2463. Extrinsic evidence *further supports* the district court’s construction, but is not necessary. The court made clear it reached its construction *without* relying on such extrinsic evidence. Appx38030. AGCO-Precision’s alternative argument is meritless, and no basis for dodging Deere’s appeal.

## CONCLUSION

The Court should vacate or reverse the non-infringement judgment.

February 9, 2024

Respectfully submitted,

*/s/ John C. O'Quinn*

John C. O'Quinn
Nathan S. Mammen
William H. Burgess
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5000

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court. According to the word processing system used to prepare this document, the brief contains 6,989 words.

*/s/ John C. O'Quinn*